Jack Horth, et al., Plaintiffs-Appellees, v. Board of Education of School District No. 205, Winnebago County, Illinois, Defendant-Appellant, and County Board of School Trustees, Winnebago County, Illinois, Defendant.

### Gen. No. 11,705.

Second District, Second Division.

May 23, 1963.

Rehearing denied July 19, 1963.

Reno, Zahm, Folgate & Skolrood, of Rockford (Roger Reno, of counsel), for appellant.

Williams, McCarthy & Kinley, of Rockford (John R. Kinley and Elmer C. Rudy, of counsel), for appellees.

SPIVEY, J.

School District No. 205 is a special charter district located within the City of Rockford. School District No. 113 is a district adjacent to the City of Rockford, but outside the Corporate limits of the City of Rockford. The City of Rockford annexed a portion of territory within District 113 (hereafter called Buckabee). To prevent this territory from becoming annexed to District No. 205 for school purposes also, the Board of Education of Buckabee filed a petition to prevent annexation. Pursuant to Section 7–2.1 of the School Code a hearing was held by a hearing officer designated by the Superintendent of Public Instruction of Winnebago County. After hearing evidence submitted by Buckabee (District 205 offered no evidence) the County Board of School Trustees entered an order declaring the annexation of the territory for school purposes to be null and void and of no effect. The defendant Board of Education of School District No. 205 (hereinafter called District 205) contrary to the action of the County Board of School Trustees, entered an order denying the petition of Buckabee Board of Education. An appeal from the latter order, pursuant to the provisions of the Administrative Review Act, was taken by Buckabee. This appeal was heard by the Circuit Court of Winnebago County. After a hearing on administrative review, the Circuit Court of Winnebago County entered an order which

68

reversed, vacated and set aside the order of District 205 as contrary to the manifest weight of the evidence and ordered that the territory annexed to the City of Rockford not be included in District 205. District 205 has appealed to this court from that decision.

The territory involved in the annexation was property zoned for industrial use. No children resided in the territory. The territory had an assessed valuation of $193,190. Annexation to District 205 would result in a loss to Buckabee in bonding power in the amount of $9,659.50, and an annual loss in education and building funds of $2,135.75. Since 1946, Buckabee has experienced a gradual loss of its territory by way of annexation to the City of Rockford and District 205.

The rights of the parties in this situation are governed by Section 7–2.1 of the School Code (Ill Rev Stats 1961, c 122, § 7–2.1). The applicable provisions of this statute are as follows:

"§ 7–2.1 Special charter districts—Changing boundaries

Notwithstanding any provision to the contrary appearing in the charter of any school district or municipality or in any provision of the statutes heretofore enacted, boundaries of such special charter districts may be changed as hereinafter specified, in any one of the following 3 manners:

A. Annexation or disconnection of territory to or from a city or village where a special charter district exists shall constitute annexation to or disconnection from such special charter school district, after a period of 60 days from the date of annexation to or disconnection from the city or village, unless during this period:

1. The school board of school trustees having jurisdiction over the property or territory

either before or after its annexation or disconnection.

2. . . .

3. . . . shall file an original petition with the Superintendent of Public Instruction, and certified copies thereof with the board of education of the special charter district and the county board of school trustees of the county in which the county superintendent has supervision over the greatest portion of the territory of the district or districts affected by such annexation or disconnection, stating:

a. . . .
b. . . .
c. that petitioner or petitioners are

1. the school board of school trustees having jurisdiction over the property or territory either before or after its annexation or disconnection, or

2. . . .
3. . . .

d. that the proposed change of school district boundaries will not be for the best interests of the schools of the area and the educational welfare of the pupils, and the facts upon which the allegation is based."

Upon filing of the petition, said Superintendent of Public Instruction shall set a time for hearing said petition not more than 30 days after receipt thereof and a place for hearing reasonably convenient to the interested parties and shall direct the petitioners to advertise notice of the time and place of such hearing at least once in a newspaper having a general circulation in the area. The county board of school trustees

70

shall cause a further notice of such hearing to be sent to all school boards (excepting the board of the special charter district) and school trustees having jurisdiction over the territory affected by the petition. The Superintendent of Public Instruction shall designate a hearing officer to conduct a hearing on the petition and to preserve a written transcript of such hearing, . . . .

The hearing officer shall conduct the hearing on the petition and shall be empowered to administer oaths and determine the admissibility of evidence. Members of the special charter school board and county board of school trustees shall attend such hearing or designate one or more of their respective members to attend such hearing. All interested persons may appear and give evidence. A copy of the transcript of such hearing shall be transmitted within 15 days. thereof to the board of the special charter district and the county board of school trustees.

The respective boards shall sit separately and if, after weighing the evidence, as presented at the hearing, either or both of said boards find that the public interest and welfare of the districts and persons involved indicate the desirability of or need therefor, the boards or either of them shall enter an order setting aside the annexation or disconnection or nullifying the effect thereof with respect to all or any part of the territory described in the petition. . . .

In the event that both of the boards determine from the evidence that the annexation or disconnection should not be prevented in whole or in part, or delayed for a stated period or the prayer of the petition otherwise changed or modified, such boards shall so order and in such event, the annexation or disconnection shall take effect 30 days after entry of the order unless appeal is taken or the order set aside or suspended, as hereafter provided:

"If both of the boards, by concurrent action, shall determine that the annexation should be prevented, in whole or in part, or delayed or the prayer of the petition otherwise changed or modified, such annexation or disconnection shall be prevented, delayed, changed or modified in accordance with such concurrent action. Failure of either board to take action on the petition within 45 days after the hearing thereon shall be deemed to be a final denial thereof entered on such 45th day after such hearing. The decisions of both boards shall be deemed to be 'administrative decisions' as defined in Section 1 of the 'Administrative Review Act,' . . . ."

Plaintiffs, Buckabee and the members of the Board of Education of Buckabee, filed a petition alleging that the school board of Buckabee, which had jurisdiction over the territory before its annexation, were petitioners and the proposed change would not be for the best interest of the schools, the area and educational welfare of the pupils for the reasons that (1) no pupils resided in the area, (2) the loss of the territory would amount to a loss of 2.64% of the assessed value of the district, (3) the revenue loss would equal $6 per day per pupil in average daily attendance, (4) the revenue loss would depress the standards of the Buckabee District, (5) the gain to District 205 (because of the size of the district) would be insignificant, (6) the tax rate of Buckabee was already higher than District 205.

At the hearing it was stipulated that Buckabee, in 1960, had an assessed valuation of $7,317,344 and that the territory which was the subject of the annexation had an assessed valuation of $193,190. It was also stipulated that District 205 had an assessed valuation of $525,533,687 for 1960, and an average daily attendance of 23,412 children as of September, 1961. In

September, 1961, Buckabee had an average daily attendance of 354 children. According to the stipulation, the bonded debt for Buckabee was $185,000 and the tax rate for Buckabee including the rate for the overlying high school district was $2.388. The tax rate for District 205 for 1960 was $1.768 and District 205 had a bonded debt of $14,221,000. The parties stipulated further that the maximum legal educational rate after referendum for Buckabee would be $1.60 and the maximum building fund would be $.25. It was stipulated that the working cash fund rate for Buckabee was at the legal maximum. The agreed total rate for District 205 was as follows: educational fund, $1.30; building fund, $.25; bond retirement, $2.18. Pursuant to the stipulation it was agreed that the maximum educational fund after referendum would be $2.50 and the maximum building fund rate after referendum would be $.375. It was further stipulated that the Rockford corporate rate was $.601 and that both districts were at the maximum permitted by referendum for educational fund rates and building fund rates.

Maps were prepared which show the location of the territory which is the subject of this proceeding and also show other territories that had been detached from Buckabee and annexed to District 205 in the past several years. Testimony was offered to show that Buckabee operated two schools with a curriculum much the same as that of District 205 except that Buckabee did not offer a kindergarten program and had art, physical education and library facilities which were inferior to those of District 205. Buckabee was said to be experiencing a cash shortage and was required to issue tax anticipation warrants. Plaintiffs' witnesses asserted that if the territory were lost to Buckabee, plans for improving the educational program next year could not be completed. The salaries of teachers in the two districts were the same, and

73

District 205 also issued tax anticipation warrants up to the maximum allowed.

The president of the Board of Buckabee testified that piecemeal annexations by District 205 and the resulting revenue loss to Buckabee had caused serious problems in planning for Buckabee.

District 205 offered no evidence in the hearing, and it appeared only by its attorney.

To secure reversal of the order of the Circuit Court of Winnebago County, District 205 contends that Buckabee had the burden of proof, under Section 7–2.1 of the School Code, to show the best interests of the districts would be served by preventing annexation. It is also urged that the finding of District 205 was not against the manifest weight of evidence and that the lower court erred in so holding. Defendant also contends that District 205 could apply its knowledge of local conditions, irrespective of existence of evidence in the record, in determining what is best for the schools of the area. Finally, defendant contended that loss of valuation does not prevent annexation when the maximum tax rate was not levied by the district from which the territory is sought to be detached.

With reference to the first point raised by the defendant, it will be unnecessary for us to consider that contention. Under the record in this cause the question is moot. It would serve no purpose for us to interpret or construe the statute as the nature of the case might require, when as a matter of law, the plaintiffs assumed the burden of proof and amply sustained that burden.

On the issue of manifest weight of the evidence, this case presents facts of a unique character. In the usual appeal from the decision of an administrative decision, the trier of fact is intended to be a person or a body with no interest in the outcome of the cause. There are those who contend, and with some justification, that this goal is not always at-

tained. In the instant cause there were two triers of fact. Each was to consider the same evidence. No member of the defendant board was present at the hearing although commanded by statute to attend. The conclusions of the triers of fact, however, were diametrically opposed. The County Board of School Trustees, who were disinterested, found as did the Circuit Court. The defendant board found in favor of itself, although no evidence was offered in its behalf at the hearing. To some this must be shocking and to us it is at least significant. This we believe would be a circumstance which we could consider inasmuch as we are urged to reverse the Circuit Court and in effect find that the decision of the County Board of School Trustees was against the manifest weight of the evidence. At once it is apparent that the applicable section presents a myriad of considerations which are unlike those existing in the usual Administrative Review.

Defendant contends that we should not affirm the trial court, where the trial court has reversed the administrative agency, unless the agency was clearly wrong, without substantial foundation and abused its discretion. The cases cited by the defendant support the proposition that the trial court should affirm the administrative agency unless its finding is clearly wrong, without substantial foundation and an abuse of discretion.

■ We are convinced that the trial court considered the well recognized rule applicable in reviewing the action of an administrative agency. Also and equally compelling was the court's duty to reverse and set aside the finding if it was without support in the record. In Welch v. County Board of School Trustees of Peoria County, 22 Ill App2d 231, 160 NE2d 505, we said, "It is also the established law in Illinois that the findings of an administrative agency must be based on facts established by evidence which is

introduced as such, and the administrative agency cannot rely on its own information to support its findings. Wauconda Tp. High School Dist. No. 118 in Lake and McHenry Counties v. County Board of School Trustees of McHenry County, 13 Ill App2d 136, 141 NE2d 52. In Wallace v. Annunzio, 411 Ill 172, 103 NE2d 467, it was held that the findings of an administrative agency must be supported by *substantial evidence,* and that the court has power to review all questions of law and fact presented by the record. Where it is found that the order of an administrative agency is without substantial foundation in the evidence, it is the duty of the courts to set it aside. Illinois Cent. R. Co. v. Illinois Commerce Commission, 395 Ill 303, 70 NE2d 64."

Our decision is not bottomed upon the fact that the defendant offered no evidence. Considering the testimony and evidence received by way of stipulations of the parties and any facts which could reasonably be said to support the decision of the defendant board, we are compelled to conclude that the trial court correctly found the decision of the defendant to be contrary to the manifest weight of the evidence.

■ Defendant contends that it had a right to apply its knowledge of local conditions together with the evidence in determining what is in the public interest, best for the schools of the area and for the educational welfare of the pupils. In School Directors of School Dist. No. 82 v. Wolever County Board of School Trustees, 34 Ill App2d 95, 180 NE2d 345, we said, "The trustees are more familiar with local problems and conditions and are better able than this court to *evaluate* the numerous factors involved." (Emphasis ours.) The Appellate Court for the Third District, in Long v. County Board of School Trustees, 15 Ill App2d 162, 145 NE2d 741, stated, "The board of school trustees in arriving at its decision in this case, enjoyed an advantage which is denied to

76

this court. We refer to the knowledge possessed by the trustees of local conditions and other factors requiring consideration in determining whether the granting of a petition would be in the best interests of the schools of the area concerned and the educational welfare of the pupils therein."

It was not our intention to indicate that a board might use its knowledge of local conditions as a substitute for evidence. The board, as the trier of fact, is like a jury or the court sitting without a jury. Neither is required to sit in a factual vacuum, but clairvoyance will not support a finding contrary to the manifest weight of the evidence. As we said in Wauconda Tp. High School Dist. v. County Board, 13 Ill App2d 136, 141 NE2d 52, "The rule is firmly established that findings of administrative boards must be based on facts established by evidence and 'nothing can be treated as evidence which is not introduced as such.' Chicago & E. I. Ry. Co. v. Commerce Commission ex rel. Hoopeston Grain & Coal Co., 341 Ill 277, 173 NE 380." The Supreme Court in the case of Smith v. Department of Registration & Education, 412 Ill 332, 106 NE2d 722, stated, "It is well settled in Illinois that an administrative tribunal cannot rely upon its own information for support of its findings."

■ Defendant contends that loss of assessed valuation through annexation does not prevent annexation when the maximum rate is not being levied by the district from which the territory is detached. We think that in general terms, this is a true statement. That is, this fact alone will not prevent detachment. We said this in School Directors of School Dist. No. 82 v. Wolever County Board of School Trustees, 34 Ill App2d 95, 180 NE2d 345. We said, "With every detachment and annexation, there is a resulting loss of tax base valuation and loss in income to the district losing a portion of its territory, but this alone

cannot be considered as preventing detachments and annexations when it appears that the maximum rate is not being levied by the district from which the territory is being detached." We did not say and should not be understood as having said that loss of income and valuation was not a factor which could be considered together with other facts and circumstances in evidence in determining whether the annexation should be allowed or prevented.

In the instant case, while Buckabee was not taxing at its maximum rate, when consideration is given to the fact that the district was also assessed for an overlying high school district, the rate of Buckabee was in excess of that of District 205 without any increase which might be caused by this detachment. It would have been proper for the trial court to have considered these facts, and no doubt, he did. However, there is nothing in the record to indicate that the court based its decision on these facts alone.

██ In addition to the foregoing considerations, we are of the opinion that problems exist which have not been considered by counsel for either party. Inasmuch as no review has been taken from the order of the County Board of School Trustees preventing the annexation, that order has become final.

██ We are of the opinion that under the statute, District 205 had no authority to enter an order denying the petition to prevent annexation unless a like order was entered by the County Board of School Trustees. The statute in essence provides that if either or both boards find that the welfare of the districts require, the boards or either of them shall enter an order setting aside the annexation. The statute also provides that in the event both boards determine that the annexation should not be prevented, such boards shall so order.

78

There is no express statutory authority which authorizes one board to determine that annexation should not be prevented. It is clear that the legislature knew the language to use if it desired to authorize unilateral action for such language was used in connection with the power to prevent annexation and withheld in connection with the power to approve the annexation.

 Thus we must conclude that the legislature anticipated that the annexation must be bilaterally approved and that prevention of annexation could be accomplished by the action of either or both boards.

From the foregoing, we are of the opinion that the order of District 205 did not authorize annexation and that by failure of District 205 to review the order of the County Board of School Trustees, that order has now become final so as to prevent the annexation.

For these reasons, as well as our reasons stated with respect to the contentions urged by District 205, the order of the Circuit Court of Winnebago County which set aside the finding of the Board of Education of School District No. 205 as being against the manifest weight of the evidence is affirmed.

Judgment affirmed.

WRIGHT, PJ and CROW, J, concur.