In the Matter of the Detachment of Territory From Bloom Township High School District Number 206, et al., Plaintiffs-Appellants, v. County Board of School Trustees of Cook County, Illinois, et al., Defendants-Appellees.

Gen. No. 50,150.

First District, Second Division.

May 18, 1965.

Klein and Thorpe, of Chicago (Arthur C. Thorpe, of counsel), for appellants.

Norman, Engelhardt, Zimmerman, Franke & Lauritzen, of Chicago (Harold W. Norman and Allyn J. Franke, of counsel), for appellees.

MR. JUSTICE LYONS delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Cook County which: one, affirmed the administrative decision of the County Board of School Trustees of Cook County, denying petitioners' (hereafter referred to as plaintiffs) request to detach certain territory from School Districts 194 and 206, and to annex said territory to Community School District 201-U; and two, reversed the order of the County Board of School Trustees of Will County, granting said petition.

Plaintiffs, pursuant to section 7.2 of the School Code, filed a petition to detach seven improved lots, seven vacant lots, part of an area dedicated for golf course purposes and an area owned by the Episcopal Archdiocese, from School Districts No. 194 and 206, Cook and Will Counties, and to annex the detached territory to Community Unit District 201-U of Will County. School District No. 206 is a Township High School District consisting of grades 9–12, and is referred to as the "Bloom" High School. District No. 194 is a Grade School District consisting of grades 1–8, and is referred to as the "Steger" School. School District No. 201-U is a Community Unit District consisting of grades 1–12, and is referred to as the "Crete" School. District 206 (Bloom) has 3,400 high school students and a more extensive program than the 201-U (Crete) High School with its enrollment of 600 to 800. District 194 (Steger) has an enrollment of about 1,800.

Plaintiffs reside in the west portion of Dennell Drive Subdivision, which is located in the Lincolnshire area of the Village of Crete. Dennell Drive Subdivision consists of thirty-nine residential lots. Lots 1–10 and 28–38 are presently in District No. 201-U, Lots 12 to 25 are in 194 and 206, and Lots 11, 26 and 39 are split by the School District dividing line so that part of the residences are in one district, and part in another. Lots 21 to 24 are owned by the Episcopal Diocese.

417

Dennell Drive Subdivision is surrounded on the east, south and north by Crete District No. 201–U. Districts 194 and 206 lie to the west of this subdivision, but the subdivision is cut off from this area by a railroad track and an undeveloped area, so that children in Dennell Drive Subdivision have to travel a mile to find any children who attend District Nos. 194 and 206. All but one of the seven families who reside in that part of Dennell Drive Subdivision in 194 and 206 signed the petition to detach and they testified at the hearing that they would have signed, but they were told they could not do so because they were not registered to vote.

The distance to the various schools is similar, and not a factor in plaintiffs' request. From the Subdivision it is $5\frac{7}{10}$ miles to the Junior-Senior High Schools, and $2\frac{7}{10}$ miles to the Freshman-Sophomore School of 206 (Bloom). To the Grade School of District 194, it is $1\frac{7}{10}$ miles, and to the Junior High School in 194, it is $1\frac{9}{10}$ miles. It is 3.2 miles to the Junior and Senior High School of District 201–U, and 2.6 miles to the Crete Elementary School of 201–U. The children are transported by bus to all the School Districts involved. Five children in the area involved go to public schools, and four to parochial schools. Two of the children attend 201–U on a tuition basis.

Plaintiffs and the realtor, who subdivided Dennell Drive, stated that they thought all of Dennell Drive Subdivision was included in District 201–U. The children actually attended 201–U for a period of one year before it was ascertained that the district boundary ran through the middle of the subdivision.

Plaintiffs testified that they wanted to be in District 201–U because they lived in Crete and that the identity of school and community was important to them in that their children participated in various activities both in school and in the community. Plain-

tiffs had no objection to any of the schools on an educational basis.

Plaintiffs' real estate expert testified that the homes in the Subdivision would drop in value approximately one-third to one-half if the petition was not granted in that it is difficult to sell homes when the children's playmates attend a different school. Defendants' realtor stated the detachment would not affect the value of the real estate.

Dr. Metcalf, the Superintendent of High School District 206, testified that 3,400 high school pupils were enrolled in District 206; that the district maintained a community college with 430 students; that a very broad program in both academic and technical education is maintained and students are prepared for both jobs and further education on the college level; that graduates of the district are accepted in institutions throughout the entire country; that a school with an enrollment of 600 to 800 pupils (this is the District 201–U enrollment) cannot provide as extensive a program as is maintained in District 206; and that the accelerated sections in District 206 run down to as low as 8 to 10 students with acceleration provided in all academic fields. He further testified that in many other boundary areas of District 206 a situation comparable to that in this case (irregular boundaries as far as village and housing developments are concerned) is quite common and the potential harm resulting from this type of detachment is very disturbing to District 206.

Stanley Monteith, Superintendent of District 194, testified that the daily attendance in the eight grades maintained by District 194 was about 1,820; that the detachment would not be beneficial to District 194 and would hurt its income; that it is having a hard time meeting present day educational requirements; and that District 194 needs all the land that is avail-

able and all the revenue it can collect. The assessed value and tax rates of the various schools are as follows:

## COOK COUNTY

| | Assessed val. | Ed. Rate | Bldg. Rate | Bond | Total |
|---|---|---|---|---|---|
| #194 | $ 22,372,442 | 1.32 | .1875 | .05113 | 2.060 |
| #206 | 189,182,231 | .9500 | .1875 | .1465 | 1.326 |

## WILL COUNTY

| | | | | | |
|---|---|---|---|---|---|
| #201-U | 41,556,976 | 1.9710 | .25 | .5166 | 2.85 |

All the Superintendents of the districts affected testified that in view of the small assessed valuation involved, the detachment and annexation would not adversely affect the ability of any of the three districts to meet the minimum requirements set forth by the State Superintendent of Public Instruction. It was stipulated there were no pending bond issues in any of the districts.

The report of the County Superintendent of Schools of Cook County, Noble J. Puffer, to the County Board stated:

> District 194, as you will note, has an especially high total tax rate and is struggling hard to support a quality education program with an inadequate tax base.
>
> It is further my judgment that any loss in revenue could result in making it even more difficult for the Steger Board of Education to provide a quality educational program with extremely meager resources. I believe, then, that it is not "to the best interests of the schools of the area and the educa-

tional welfare of the pupils" that such a change in boundaries be granted, and I further believe that it will seriously affect the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction.

Testimony and a map of District 194 indicated that there had been four other detachments from 194. Plaintiffs objected to the introduction of this evidence.

It is plaintiffs' theory that identity of territory and community interest are educational factors to be considered by the Board of School Trustees in determining whether a detachment should be allowed and that substantial evidence of these factors was presented to the Board; thus the Board arrived at the wrong result in denying the petition of plaintiffs.

It is defendants' position that the Legislature, in enacting Article 7 of the School Code, set standards which have to be supported by substantial evidence before the County Board of School Trustees is authorized to make a change in boundaries, and that the determination of the County Board of School Trustees of Cook County, denying the proposed change in school district boundaries, was supported by substantial evidence of the standards set forth in the School Code and thus its determination must be affirmed.

■ We agree with defendants' contention that the decision of the Cook County Board of School Trustees is supported by substantial evidence of sound educational factors. It was pointed out in detail in the testimony of Harold Metcalf, Superintendent of District 206 and Stanley Monteith, Superintendent of District 194, and the report of Noble J. Puffer, the County Superintendent of Schools, that the interests of the schools would be damaged and the educational welfare of the students harmed by the detachment.

The evidence presented, clearly showed the extraordinary educational opportunities offered, and the potential harm that could result to Districts 194 and 206.

Plaintiffs contend that in determining the ability of a school district to meet the minimum standards of the Superintendent of Public Instruction, the court should consider whether the district is levying the maximum tax rate. Plaintiffs, in support of their contention, cite School Directors of School District No. 82, County of Whiteside v. Wolever, 34 Ill App2d 95 at Page 97, 180 NE2d 345 (1962), where the court states:

> With every detachment and annexation, there is a resulting loss of tax base valuation and loss in income to the district losing a portion of its territory, but this alone cannot be considered as preventing detachments and annexations when it appears that the maximum rate is not being levied by the district from which the territory is being detached.

█ We disagree with plaintiffs' contention. In the case of Horth v. Board of Education, Winnebago County, 42 Ill App2d 65, 191 NE2d 601 (1963), the same Appellate Court that decided the Wolever case explained the above quotation and refuted the construction plaintiffs have placed on it. The facts in Horth are strikingly similar to those in the instant case. Both involve small areas; assessed valuation in Horth was $193,190 and here about $100,000; annual tax loss in Horth was $2,135.75 and here $1,500; and gradual loss of territory occurred since 1946 in Horth and since 1948 in the instant case. In Horth maps were used as evidence to show the location of territories previously detached from Buckabee and annexed to Rockford and testimony was introduced to show the effect of these piecemeal detachments.

On the question of considering the effect of loss of valuation where the tax rate is not at the maximum, the court stated at Page 77:

"Defendant contends that loss of assessed valuation through annexation does not prevent annexation when the maximum rate is not levied by the district from which the territory is detached. We think that in general terms, this is a true statement. That is, this fact alone will not prevent detachment. We said this in School Directors of School Dist. No. 82 v. Wolever County Board of School Trustees, 34 Ill App2d 95, 180 NE2d 345. We said, 'With every detachment and annexation, there is a resulting loss of tax base valuation and loss in income to the district losing a portion of its territory, but this alone cannot be considered as preventing detachments and annexations when it appears that the maximum rate is not being levied by the district from which the territory is being detached.' We did not say and should not be understood as having said that loss of income and valuation was not a factor which could be considered together with other facts and circumstances in evidence in determining whether the annexation should be allowed or prevented.

In the instant case, while Buckabee was not taxing at its maximum rate, when consideration is given to the fact that the district was also assessed for an overlying high school district, the rate of Buckabee was in excess of that of District 205, without any increase which might be caused by this detachment. It would have been proper for the trial court to have considered these facts, and no doubt, he did. However, there is nothing in the record to indicate that the court based its decision on these facts alone."

With this in mind we hold there is nothing in the record to indicate the lower court based its decision on loss of income alone.

Plaintiffs next contend that the effect of a detachment on property values is an educational factor in determining whether or not the detachment should be allowed and that sufficient evidence of this factor was presented to the Board for the Board to rule in favor of plaintiffs. The real estate expert of plaintiffs testified that the value of the property in this subdivision would be reduced from one-half to one-third if the detachment were not granted and as a reason stated it is difficult to sell homes in a subdivision where the students are isolated from children in their own school district. The real estate expert for defendants testified that there would be no serious effect on the value of the property by reason of this detachment.

Plaintiffs, in support of their position, cite Burnidge v. County Board of School Trustees of Kane County, et al., 25 Ill App2d 503, 167 NE2d 21 (1960), where the Court stated at Page 510:

"Not only would the community suffer from an educational standpoint, but the action of the board would result in a depreciation of value of the territory in question. This fact has a direct impact on the educational welfare of the community for it is upon the basis of the value of property that funds are made available for school purposes. . . . Then too, the fact of the appreciation in value is persuasive as demonstrating the soundness of the contention that this territory is naturally and properly a part of the Elgin District for educational purposes."

That case and the instant case are distinguishable. The references to assessed valuation in Burnidge was merely one of several educational factors confirming

the existence of educational benefits which would flow from the detachment. The area was close to the large city of Elgin. The Elgin schools could provide better educational facilities. Elgin had a Community College program (the same as District 206 in this case), but the Plato district did not. It was eleven miles to the Plato school but only three miles to the Elgin schools and participation in the school program by the children would be increased if the detachment were allowed. In the instant case the District 194 and 206 schools are generally closer than the District 201–U schools.

Furthermore, the self-interest of plaintiffs' expert, who was the developer of the proposed detachment, was undoubtedly weighed by the County Board, and considered in the light of the testimony of a disinterested real estate expert of defendant, who testified that the denial of the detachment would not decrease the value of the property.

Plaintiffs next contend that identity of territory and community of interest are educational factors to be considered in determining whether a detachment should be allowed and that sufficient evidence of these factors were submitted to the Board for the Board to rule in favor of plaintiffs. Plaintiffs again rely on Burnidge (supra) where the court stated at Page 509:

"But even as much or more than these considerations, is the fact that an identification with a school district in a child's natural community center will inevitably result in increased participation in school activities by the child and his parents. Such increased participation cannot but result in an improvement in the educational picture of the entire area. By the same token, an unnatural identification with a school district would have an opposite result with a corresponding loss of participation and resulting poorer edu-

cational picture. In recognition of these facts the legislature made provision for proceedings to change the boundaries of existing districts.

". . . We also said, 'parents are definitely interested in the schools their children attend. All their ties and interests may be centered in a certain community and their convenience and their personal desires, as well as the personal desires of the landowner, should be given due consideration by the county boards of school trustees in determining whether the prayer of a petition to detach should be granted or denied. All things being equal, the landowner, the taxes from whose property enables the school of the district to operate, the parents and students residing in the district, should be permitted to choose the school the pupils should attend.' "

Burnidge can be distinguished from the instant case. There the court found that the educational facilities of the two districts were essentially equal and thus the educational welfare of plaintiffs' children would be protected. The court went on to state on pages 510, 511:

"The Board would be remiss in its duty if a petition were allowed to detach territory from a district where educational facilities were superior, and annex the territory to a district of unequal and inferior facilities. Such action would not be in the best interests of the educational welfare of the children involved. If substantial detriment were to result from the allowance of the petition, then education facilities would not remain essentially equal."

In the instant case there was evidence introduced that the districts from which plaintiff wanted a detach-

ment were superior and thus the educational welfare of the plaintiffs' children would suffer. All the other educational factors were not equal.

The court in Burnidge also quoted favorably the language found in Oakdale Community Consol. School Dist. No. 1, et al., v. County Board of School Trustees of Randolph County, et al., 12 Ill2d 190, 145 NE2d 736 (1957), and stated at page 508, 509:

"... preference of the residents of the territory may be considered, but such preference alone is not controlling. ... The welfare of the affected districts and their pupils as a whole must control rather than the wishes of a few, and such petitions granted only where the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole."

Plaintiffs also cite, in support of their position, the case of School District No. 106, Cook County v. County Board of School Trustees of Cook County, 48 Ill App2d 158, 198 NE2d 164 (1964). The following statement was made in that decision at page 162:

At the hearing, George Olsen, the superintendent of the detaching high school, testified that he had obtained such authorization to give "the children in this area at the high school level the advantage of being in school where they are meeting after school the same kids."

We find that the case cited above is distinguishable from the instant case. In that case the Cook and DuPage County School Boards ordered the detachment of lands from School District 106. The orders were affirmed by the Circuit Court. The petition for detachment was filed because the Tri-State Toll road cut off the school districts to the east from the peti-

427

tioning property owners. Several educational factors were given by the Board as reasons for the detachment. These factors were the hazard to the children crossing the Toll road, the shorter distance to the annexing school, identity of community in social, commercial and religious activities, a small loss of revenue to the detaching school district and a continuance of quality education to the pupils affected. Also listed as a factor was the payment of tuition by the detaching school to the annexing school so that the children in the annexing school area could continue their associations. In the instant case there is no safety hazard involved and the distance to the two school districts was approximately the same. The tuition of two children attending district 201–U is paid by their parents and any associations they have developed will continue so long as this tuition is paid. The remainder of the pupils attending the proposed detaching school will continue associating with their schoolmates in Districts 194 and 206, but only if the detachment is disallowed. True the loss of revenue of the detaching school is small, the personal preference of the pupils and their parents will be thwarted and any identification of school and community will be kept at a minimum. There is also evidence that property values will diminish. We hold, however, that a detachment would be improper, as the most persuasive factor is the finding of the Board that the educational welfare of the pupils would suffer. We find the order of the Board was not contrary to the manifest weight of the evidence. As stated in School Directors of School District No. 82 v. Wolever, 26 Ill2d 264, 267, 186 NE2d 281 (1962):

The judiciary is ill equipped to act as a super school board in assaying the complex factors involved in determining the best interest of the

schools and the pupils affected by a change in boundaries.

Plaintiffs next maintain that the presumption in favor of the decision of the administrative agency has been overcome. In support of that position plaintiffs contend: one, that the conflicting decisions of two administrative agencies and the decision of the Will County Board are entitled to equal weight; two, that the Cook County Board was influenced by evidence of prior detachments that should not have been admitted in evidence; three, that the statutory report of the County Superintendent of Schools of Cook County was in error; and four, plaintiffs were not given a fair and impartial hearing.

■■ As to plaintiffs' first contention we have already held that there was substantial evidence relative to the education factors set forth by the legislature, to support the decision of the Cook County Board of School Trustees. The guide lines for review of decisions of administrative bodies was clearly delineated by the Supreme Court in Heft v. Zoning Board of Appeals of Peoria, 31 Ill2d 266, 270-271, 201 NE2d 364 (1964), where the court stated:

> On administrative review the issue is not whether the Court approves the action taken by the administrative body but whether there was substantial evidence to support the decision. . . .

The Appellate Court in Avent v. Police Board of Chicago, 49 Ill App2d 228 at 236, 199 NE2d 637 (1964), stated:

> It is not the province of a court to reweigh the evidence and it is immaterial that the court, if it heard the evidence originally, would have reached a different conclusion. It is for the administrative agency to resolve conflicting evidence and to

429

determine where the truth lies. As long as the decision of an administrative agency is not against the manifest weight of the evidence it should not be set aside.

■ Plaintiffs claim that since the Cook County Board denied that petition and the Will County Board allowed the petition, they are each entitled to equal weight (or more properly stated—neither is entitled to any weight) and the court in such case must make the decision. The statute does not place this decision making power in the courts. Sections 7–2 of the School Code authorizes the detachment only by the *concurrent* approval of both county boards when action by two is required, as in this case. (Emphasis supplied.) It is the petitioners' duty to get approval of both boards —approval by one is not sufficient. The authority of the courts on review is the same whether one or two boards are involved in the decision. Those taking the administrative review are asking that an administrative decision be reviewed and reversed. In this case plaintiffs are asking that the Cook County Board of School Trustees' decision be reversed. They are not asking that the Will County decision be reviewed. Whether the Cook County Board decision should be reversed is measured by whether it was supported by substantial evidence and the fact that the Will County Board arrived at the opposite decision should not in any way change the evidence that is in the record to support the Cook County Board decision.

The Supreme Court has already closed the door on plaintiffs' attempt to make the court into a decision making body in School Directors v. Wolever, (supra) where the court stated on page 268:

> It must remain for local boards to weigh the relevant factors to determine the action best serving our entire education system. When the entire

record indicates, as it does here, that the board has considered the applicable statutory standards and is supported in its conclusion by substantial evidence, its determination must be affirmed.

All requirements have been duly met by the Cook County Board of School Trustees and its decision is supported by substantial evidence.

█ In support of their second contention plaintiffs reason that the Board of School Trustees may consider the effect a detachment has in encouraging other detachments in the *future,* but the Board should not be influenced by *past* detachments. (Emphasis supplied.) We hold that such evidence was relevant to show the effect detachments in the past will have on the districts in the future. With this in mind we find that four previous detachments have been allowed in this general area in 1948 and 1949 and the conditions resulting from these detachments are now being used to promote this detachment. If the argument presented by plaintiff is sufficient to require this detachment to be made, a constant chipping away at the boundaries of these districts will occur.

█ In support of their third contention plaintiffs point out that the report of the County Superintendent of Schools of Cook County stated:

> Since this petition involves only a part of the Dennell Subdivision, it could, if granted, result in a petition for the detachment of *further lots in the subdivision* as they are sold and residences built on them. This could mean a constant chipping away at the assessed valuation of the Steger public schools and Bloom Township High School.

Plaintiffs allege this assumption was in error as the granting of the petition will result in *all* of Dennell Drive Subdivision being in district 201–U and as the exhibits further indicate this will result in a logical

431

boundary line along State Street rather than through the middle of the subdivision. (Emphasis supplied.) We hold that this error was not prejudicial to plaintiffs' case. The Board was interested in preventing future disconnections in the whole area and not only Dennell Drive Subdivision.

■ Finally plaintiffs allege that the above error in the report was brought to the Superintendent's attention during the hearing and was repeated again at a conference held in April, 1964, between the Superintendent, the Cook County Board of School Trustees and the attorneys for defendants, the matter having been previously taken under advisement on December 11, 1963; that the attorney for plaintiffs was not present at the April, 1964 conference, as he received no notice of the hearing; and that the discussing and deciding of the case at this April meeting with opposing counsel present, prejudiced the rights of these plaintiffs, particularly when the erroneously adverse report of the Superintendent was reread to the Trustees and thereby emphasized. We hold there was no unfairness in the proceedings. It was within the province of plaintiffs' attorney to call to the attention of the Board any error in the report of the County Superintendent and he did so during the hearing. The hearing and submission of evidence was concluded at the December 11, 1963 hearing and the case was taken under advisement. At the regular quarterly meeting of January 6, 1964, the matter was continued to the regular quarterly meeting in April. On April 6, 1964 at the regular quarterly meeting which is open to the public, attorneys for District 194 and District 206 attended this public meeting anticipating a decision, the same as an attorney attends a regular court date in anticipation of the handing down of a decision. The attorney for plaintiffs did not attend. Plaintiffs cannot profit from their own non-action. The Cook Coun-

ty Board had a right to make its decision at its regular meeting. The failure of the attorneys for plaintiffs to be present did not deprive the Board of its decision making power or make its decision illegal or unfair.

In the final analysis we have before us a situation in which personal convenience and little educational advantage to District 201–U would be accomplished by the detachment. Districts 194 and 206, however, would be definitely hurt by a detachment in this territory, as they need as much income as they can get to maintain their educational programs. Furthermore, the education of the children would suffer. The statement of the court in Lorenson v. County Board of School Trustees of Piatt County, 13 Ill App2d 468, 475, 142 NE2d 493 (1957), is particularly appropriate:

> While it is contended by petitioners that their reason for desiring annexation to the Atwood district is the fact that the latter is in a position to furnish better school facilities, the record indicates that the basis upon which transfer of the White School area is sought is the personal desires and convenience of the residents of the petitioning territory.

Similarly in this case the major basis for the change is personal preference. We hold that the Board considered all the evidence including the personal preference of plaintiffs and that the decision of the Circuit Court in finding there was substantial evidence in which to disallow the detachment was not against the manifest weight of the evidence. The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and BRYANT, J., concur.