THE WOOD DALE PUBLIC LIBRARY DISTRICT, Petitioner-Appellee, *v.* THE VILLAGE OF ITASCA *et al.*, Respondents-Appellants.

(No. 73-80;

Second District—September 27, 1974.

Lawrence C. Traeger, Jr., of Chicago, for appellants.

Juergensmeyer & Zimmerman, of Elgin, for appellee.

Mr. JUSTICE BEAM delivered the opinion of the court:

This appeal is from a judgment of the circuit court of Du Page County in a statutory proceeding for judicial review of action taken by the Village of Itasca. Two parcels of land situated in the Wood Dale Public Library District were annexed to the Village of Itasca. This resulted in the disconnection of the land from the Wood Dale Public Library District. The Library District commenced the present litigation by filing petitions opposing the disconnections.

The petitioner, Wood Dale Public Library District, has operated as a public library district since 1962 and the respondent Village of Itasca is a municipal corporation that maintains a public library with elected library directors.

The Village of Itasca annexed a parcel of 113 acres referred to as the Commonwealth Edison property. Then, later, by a separate ordinance, Itasca annexed another parcel of 61 acres referred to as the Ralston Purina property. The two parcels which are situated on the perimeter of the Wood Dale Library District, are not subdivided. The parcels were assessed as farmland under the assessment roles of 1970 and are now zoned "M" (limited manufacturing) under the annexing ordinances.

Separate petitions were filed by the Wood Dale District opposing the disconnections. These were ultimately consolidated. The circuit court found that the loss of the assessed valuation of the two parcels by rea-

son of disconnection from the Wood Dale Library District "will and would impair" the ability of the Library District to render adequate library services and ordered the disconnection of the two parcels "not to occur." The Village of Itasca and its library directors filed a post-trial motion which was denied. The Village appeals.

■■ The controlling issue is whether the Wood Dale Public Library District as a matter of law under the petitions opposing disconnections met the burden of proving the truth of the allegations that the loss of assessed valuation by reason of such disconnections "will impair the ability of the District to render fully adequate library service to the territory remaining with the District." We hold that petitioner failed to sustain its burden of proof by competent evidence that disconnections "will impair" its ability to render fully adequate library service to the territory remaining within the district.

The 1970 assessed valuations for tax assessment purposes applicable to our case are: Commonwealth Edison parcel $67,020; Ralston Purina parcel $33,970; and a total valuation of $34,861,528 for all of the Wood Dale Library District. The combined total assessed valuation of the two parcels is less than three one-thousandths of the total assessed valuation of the District.

Section 3—1 of the Illinois Public Library District Act (Ill. Rev. Stat. 1969, ch. 81, § 1003—1) provides that a library district may levy for library purposes an annual tax not exceeding .12% of the taxable property within the district, as equalized and assessed by the Department of Local Government Affairs. The annual tax rate levied by the Wood Dale Library District was approximately 11.9 cents per $100 of assessed valuation. The Wood Dale Library District could have extended the 1970 assessed valuation by the 12-cent rate that would have resulted in a levy of $41,833.83; instead, under the 11.9-cent rate it levied $348.61 less, or $41,485.22. The annual rate levied against the two parcels under the 1970 valuations produced total taxes in the amount of $120.17. If the Library District, exclusive of the two parcels in question, had levied the full 12-cent rate permitted, the taxes produced would have been $41,-712.63 or $227 more than the District levied.

■■ The Wood Dale Library District argues that the court must look to the tax year in which the court hearing was being held and thus must take into consideration the most recent valuations as of the date of the hearing. We cannot agree with this proposition which is speculative. If the court relied on that premise, then it would be necessary to have evidence as to the present value of all the property situated in the library district at the time of the hearing. The only just way in determining the ultimate issue is to compare the two parcels that were disconnected

with the assessed valuation of the district and thus use the year 1970 for all purposes in order to compare the financial loss to the library district.

A witness testified that the value of the two parcels of real estate presently zoned "manufacturing" have a value far in excess of the then assessed valuations. His testimony further reflects that the subject property would be improved with manufacturing buildings or commercial enterprises within 5 to 10 years. The lower court properly sustained an objection to this testimony as to the cash value and projected assessed value. The testimony was highly speculative. In any event, the testimony failed to consider values of the entire Wood Dale District.

■■ Testimony of Mrs. Hannoy, a member of the board of trustees and treasurer of the Library District, concluded that the Library District does not have adequate tax funds to operate the Library District in a manner to meet the minimum standards prescribed by the American Library Association. There was no comparison with other library districts nor an analysis of the operation of the Wood Dale District. Thus we find this testimony was founded on conclusions.

■ Wood Dale District contends that under section 3—7(b) of the act relating to public libraries (Ill. Rev. Stat. 1969, ch. 81, § 3—7(b)), the Village of Itasca shall pay to Wood Dale District library taxes collected by Itasca from taxes levied upon taxable property within the library district. There is no reported case interpreting this statute. We hold for purposes of this case that this statute is construed to cover the disbursement of taxes levied and extended prior to the annexation of the two parcels and pending the disconnection of the two parcels through final court proceedings.

Wood Dale District further urges that section 4—11 should be considered. We conclude this statutory provision has no application to the facts here presented during the interim period of annexation and has no force or effect subsequent to a valid disconnection proceedings.

The Wood Dale District cites *People ex rel. Kelly v. Lund,* 25 Ill.2d 387, 185 N.E.2d 174, which interpreted the Fire Protection Districts Act (Ill. Rev. Stat. 1969, ch. 127½, § 31b) (comparable in some respects to the library act, ch. 81, § 4—11). The court there concluded that where a portion of a fire protection district was subsequently annexed to a city with a fire department, the city should not exercise any powers over that portion of the district with respect to fire protection, and regulation, and objections to fire protection taxes by the city over that portion of the district were sustained. This case was decided prior to the passage of the Fire Protection Districts Act (Ill. Rev. Stat. 1969, ch. 127½, § 38.3). This statute entitled "Disconnection by operation of law  *  *  *" is

virtually the same as section 2—9a of the Public Library District Act (Ill. Rev. Stat. 1969, ch. 81, par. 1002—9.1). Section 20 of the Fire Protection District Act (Ill. Rev. Stat. 1969, ch. 127½, par. 38.3), is interpreted by the court in the recent case of *In re Roberts Park Fire Protection District*, 20 Ill.App.3d 282, 314 N.E.2d 208. The order of the trial court permitting disconnection was reversed. The facts in that case are decidedly different from the instant case. In the *Park Fire District* cause, the portion of the district which was located within the village comprised 30% or 35% of the total area of the district. Also, approximately 24.5% of the total revenue of the district resulted from taxes on real estate within the village. It is evident the disconnection of the portion of the village would have a grave and immediate effect on the territory remaining within the fire district. The court stated:

> "This court does not wish to be placed in the position of approving a disconnection with resulting substantial loss of tax revenue to the District where the evidence shows so clearly that such action would impair the present fully adequate fire protection." (20 Ill.App.3d at 291.)

It is obvious the court interpreted the words of the statute as having a "present" effect on the District.

The rights of the parties are governed by section 2—9a of the Public Library District Act (Ill. Rev. Stat. 1969, ch. 81, § 1002—9.1). The applicable provisions of this statute are as follows:

> "Any territory within a public library district that is or has been annexed to a city, village or incorporated town that maintains a public library is, by operation of law, disconnected from the public library district * * *. Such disconnection by operation of law does not occur if, within 60 days after such annexation * * *, the public library district files with the appropriate court *a petition alleging that such disconnection will cause the territory remaining in the district to be noncontiguous or that the loss of assessed valuation by reason of such disconnection will impair the ability of the district to render fully adequate library service to the territory remaining with the district.* * * * At such hearing, *the district has the burden of proving the truth of the allegations in its petition.*" (Emphasis supplied.)

It is a recognized principle of statutory construction that where two or more constructions may be placed upon a statute, the court should use the construction which leads to a logical result. (*Board of Education v. Community High School District No. 211*, 89 Ill.App.2d 481, 232 N.E.2d 316.) If we apply the construction urged by the Wood

Dale District, then any loss of assessed valuation would impair the Library District's ability to render fully adequate library service. We are not persuaded that the legislature intended that result in a disconnection proceedings. To so hold would mean that there could never be a disconnection as there would always be some loss of assessed valuation. In this case, the loss of $120.17 in comparison with a levy of $41,485.22 under the 11.9-cent rate used by the District, or $41,833.83 if the Library District had levied under the permissible rate of 12 cents, does not result in an impairment of the ability of the District to render fully adequate library service.

Webster's New Twentieth Century Dictionary (2d ed. 1965) defines the key words involved in our statute as follows: "will"— an auxiliary used to express futurity; "impair"—to make worse, less, etc; and the word "adequate"—1. equal to a requirement or occasion; sufficient; suitable.

■■ Where the same word is used in different portions of a statute, the presumption is that the word is employed with the same meaning throughout the statute. (*Radford v. Withrow*, 401 Ill. 14, 81 N.E.2d 417.) The statute in question employs the word "will" as follows:

> "\* \* \* [W]ill cause the territory remaining in the district to be noncontiguous or that the loss of assessed valuation by reason of such disconnection will impair the ability of the district to render fully adequate library service \* \* \*." (Ill. Rev. Stat. 1969, ch. 81, § 1002—9.1.)

The General Assembly intended the entire statute and the parts thereof to be consistent. (*People ex rel. Community High School District No. 231 v. Hupe*, 2 Ill.2d 434, 118 N.E.2d 328.) It is obvious that whether the remaining territory will be noncontiguous is determinable in the immediate future, in other words, as soon as disconnection occurs. Using this same principle then, "will impair" also means in point of time the moment disconnection takes place. The words "will cause," "fully" and "adequate," and "will impair" all have a current and immediate future effect; otherwise, the phrases and words would not be consistent.

Wood Dale Library District further contends the disconnections should not occur even though Wood Dale was not levying taxes at the maximum rate and cites *Horth v. Board of Education*, 42 Ill.App.2d 65, 191 N.E.2d 601, and *Bloom Township High School v. County Board of School Trustees*, 59 Ill.App.2d 415, 207 N.E.2d 694. The court in those cases considered many factors in addition to the loss of tax funds in denying detachments. The loss of tax money was not the controlling issue. In *Horth*, the court stated: "Defendant contends that loss of as-

sessed valuation through annexation does not prevent annexation when the maximum rate is not being levied by the district from which the territory is detached. We think that in general terms, this is a true statement." 42 Ill.App.2d at 77.

In considering the school cases, it is noted that in a detachment proceedings there is always a base valuation loss which results in a loss of income to the district from which detachment is made, but this loss can in no way affect educational facilities detrimentally unless the maximum legal tax rate is being levied at the time of the detachment. *Board of Education v. Scott*, 105 Ill.App.2d 192, 244 N.E.2d 821.

There are no residents on the two parcels in the case at bar and the tax revenue loss is minimal, only $120.17. Disconnection of the two parcels will not impair the ability of the library district "to render fully adequate library service." Again, if this small amount results in an impairment, then the statute should provide that any loss would prevent disconnection. We hold that such a minimal loss to the Wood Dale District will not cause such an impairment to prevent a disconnection of the two parcels.

The Wood Dale District raises another issue referred to as "salami" disconnections and cites *Bloom.* The court held that evidence is relevant to consider the effect of detachments in the past on the district in the future. The court in *Bloom* found there had been four previous detachments and the conditions resulting from those detachments were being used to promote the present detachment.

■■ Testimony of Mrs. Hannoy and comments of counsel during the hearing indicated there were two parcels referred to as the Nottke tract and the Elk Grove Village tract which have been disconnected. The testimony is not very enlightening but indicates the disconnection must have occurred "years ago." In view of the limited evidence offered as to these two prior disconnections, as well as a lack of testimony reflecting the loss of revenue, we find that those two former disconnections have no controlling effect with reference to the present disconnections.

The court in *Board of Education v. County Board of School Trustees*, 77 Ill.App.2d 368, 222 N.E.2d 343, said:

"Economic reality must cause us to observe that this statutory framework can well permit of nibbling away at territory, taking more in the aggregate than would or could be permitted at any one time. The dilemma  *  *  *  must be resolved in a legislative, not a judicial, forum." (77 Ill.App.2d at 373.)

The record is silent on the question as to whether the two prior disconnections were used in any way to promote the present disconnec-

tions. In any event, based on *Board of Education v. County Board of School Trustees*, there was not a sufficient history of disconnections in the instant case to prevent the present disconnections.

The court must examine each annexation or detachment proceedings in the light of the facts existing at that time, and for that purpose it is impermissible to speculate as to the effect of future detachments. (*Board of Education v. Scott.*) We can neither anticipate nor project the conditions of the library district at some future time when another disconnection proceedings may or may not be instituted.

■■ We are cognizant of the principle which requires us to examine the record before us and to determine whether the evidence justifies the judgment. (*Friedman Electric Co. v. St. Clair County Housing Authority*, 23 Ill.App.2d 16, 161 N.E.2d 473.) The findings of the able trial judge should not be disturbed unless we conclude the findings reached by him and the result were manifestly against the weight of evidence. (*Reese v. Melahn*, 53 Ill.2d 508, 292 N.E.2d 375.) We feel the trial court's finding that the disconnections of the two parcels "will and would impair" the ability of the Wood Dale Library District to render fully adequate library services and the court's judgment order granting Wood Dale's petitions and thus denying the disconnections of the parcels are against the manifest weight of the evidence.

The judgment appealed from is reversed. The cause is remanded with directions to enter judgment denying the petitions of the Wood Dale Public Library District.

Judgment reversed and cause remanded with directions.

A. SCOTT, P. J., and DIXON, J., concur.