WINFIELD FIRE PROTECTION DISTRICT, Plaintiff-Appellant, *v.* THE CITY OF WHEATON, Defendant-Appellee.

(No. 73-429;

Second District (1st Division)—June 24, 1975.

Edward J. Vertovec, of Elmhurst, for appellant.

Fawell, James & Brooks, of Naperville (Gerald J. Brooks, of counsel), for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The Winfield Fire Protection District (WFPD) appeals from an order disconnecting territories. (Ill. Rev. Stat. 1973, ch. 127½, par. 38.3). The construction and validity of the statute are in issue.

The statute provides, as material:

"Any territory within a fire protection district that is or has been annexed to a city, village or incorporated town that provides fire protection for property within such city, village or incorporated town is, by operation of law, disconnected from the fire protection district ***. Such disconnection by operation of law does not occur if, within 60 days after such annexation ***, the fire protection district files with the appropriate court a petition alleging that such disconnection will cause the territory remaining in the district to be noncontiguous or that the loss of assessed valuation by reason of such disconnection will impair the ability of the district to render fully adequate fire protection service to the territory remaining with the district. ***"

In July of 1965, following legislative adoption of section 20 of the Fire Protection District Act (Ill. Rev. Stat. 1973, ch. 127½, par. 38.3), the WFPD filed a petition objecting to the automatic disconnection of certain territory then within the city limits of Wheaton. The petition included allegations that the disconnection would result in noncontiguity of certain geographical areas and would impair the financial status of the

district together with its ability to render full and adequate fire protection service to the remaining territory.

On March 3, 1967, an order was entered by the trial court without a hearing stating that the automatic disconnection provisions of section 20 (Ill. Rev. Stat. 1973, ch. 127½, par. 38.3) were not applicable to any territory within the WFPD as it existed as of that date.[1] The City of Wheaton filed a timely motion to vacate the March 3 decree, charging that there was no notice of the hearing and that therefore the court lacked jurisdiction to enter the order. In an answer to defendant's motion the WFPD admitted that the order was entered without notice and without the City having been given the opportunity to be heard. No hearing was conducted on the motion to vacate.

Between 1968 and 1972 the City of Wheaton annexed additional portions of the WFPD. The WFPD, however, only filed petitions objecting to the automatic disconnection of some of the annexed areas. In July of 1973, a hearing on the petitions was conducted as a result of which the trial court ordered that the previous March 3, 1967, order be vacated, that the territories annexed by the City of Wheaton be disconnected from the WFPD and that the City of Wheaton assume the duty of fire protection for all such territories. The order included the findings that petitions to prevent disconnection were to be heard in one consolidated case as of the date of the hearing, that the evidence presented was to be based upon existing valuation and rates rather than those as of the date of filing the petitions, that "non-contiguity" was waived as a defense by the failure of the fire protection district to file petitions on every annexation, and that the district had failed to show impairment of its ability to render fully adequate protection to the remainder of the district.

The WFPD contends that each of the findings are erroneous and led the trial court to the wrong conclusion.

The district contends that the questions of status, contiguity and ability to serve should have been determined as of the date of the filing of the various petitions rather than as of the date of the hearing upon all of the petitions. It first argues that certain of the annexations to the City of Wheaton resulted in noncontiguity at the time the petitions to prevent disconnection were filed, but that this was remedied by subsequent annexations thus eliminating the issue of contiguity at the date of the hearing on some of the parcels involved. We concluded, however, that the trial

---

[1] Presumably the order was a somewhat informal attempt to maintain the status quo in the expectation that there would be judicial construction of the new statute during a time when there were expansive annexations to existing municipalities.

court correctly determined that the date of the hearing was the controlling date under the statute.

■■ In stating the allegations which must be contained in a petition filed by a fire protection district to prevent automatic disconnection of a part of its territory when such territory is within an annexation to a municipality, the statute itself uses words of futurity ("will cause the territory remaining," "will impair the ability of the district"). In the absence of statutory definitions indicating a different legislative intent, we must presume that the words have their ordinary and popularly understood meaning. (*People v. Dednam* (1973), 55 Ill.2d 565, 568.) As commonly used, the word "will" is defined as an auxiliary word to express futurity (Webster's New Twentieth Century Dictionary (2d ed. 1965).) In *Wood Dale Public Library District v. Village of Itasca* (1974), 22 Ill. App.3d 922, 928, this court held that similar statutory provisions affecting library districts (Ill. Rev. Stat. 1969, ch. 81, par. 1002—9.1) required that the issues of noncontiguity and impairment of values be determined "as soon as disconnection occurs." [2]

On analysis, the statute clearly contemplates that questions of contiguity and impairment must be based upon facts as they exist at the time of the hearing and final disposition. Upon passage of the time specified in the statute disconnection is automatic. The automatic disconnection does not occur, however, if a petition is filed within 60 days of the annexation to the City. In that event a judicial hearing is indicated at the conclusion of which the court either orders the disconnection or rules in favor of the objecting fire protection district. Since a hearing is contemplated in order to determine whether disconnection should take place and since disconnection does not occur until it is in fact ordered by the court, the facts at the time of the hearing and final disposition must control the court's decision. This interpretation is in accord with the usual holdings in other disconnection proceedings where it has been concluded that the determination of whether certain territory may be deemed disconnected from a city must be based on the state of facts existing at the time of the hearing rather than at the time the petition to disconnect was filed. *La Salle National Bank v. Village of Willowbrook* (1963), 40 Ill.App.2d 359, 362; *In re Petition of Cox* (1961), 32 Ill.App.2d 142 (abstract opinion); *In re Petition of Hillcrest Center, Inc.* (1962), 36 Ill.App.2d 19 (Abstract opinion).

---

[2] Although we stated in *Wood Dale* (see dicta at 925) that consideration of the most recent valuations as of the date of the hearing would be speculative with regard to the question of impairment of value, we now find it necessary to modify this position.

The underlying rationale for these decisions become evident when annexation proceedings are compared to disconnection proceedings. In annexation proceedings the municipality must ascertain whether the facts presented in a particular annexation petition show compliance with statutory prerequisites before it may exercise its annexing power. Since it is jurisdictional with the passage of the annexation ordinance that contiguity be present, the sufficiency of the petition must be determined at the time of the passage of the ordinance rather than at a subsequent time. *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill.App.2d 275, 279-282; *In re Annexation to City of Springfield* (1967), 85 Ill.App.2d 191, 194.

WFPD argues further that the objecting petitions should have been heard separately and considered individually. It reasons that collective consideration of the petitions allows the court to determine boundaries rather than the legislature. And, it argues that the collective hearing allowed the municipality to eliminate the issue of contiguity. It also argues that the collective hearing changed the entire question of valuation to an assessed valuation many years later thus affecting the right of the district to plan its levy. It appears obvious, however, that the latter contention cannot be urged to have adversely affected the district in view of the rapid rise in valuations in the period intervening between the petitions and the hearing dates.

■■ The district was not prevented from seeking hearings on disconnections as they came up or even attacking the various annexations to the City of Wheaton in appropriate proceedings. However, the district's burden to notice up their petitions for a court hearing if desired could not be avoided by it. While the statute establishes a prescribed time within which the court is to set a hearing date, this requirement is merely directory rather than mandatory, and the failure of the judge to enter an order fixing a hearing date within the time prescribed does not affect the validity of the proceedings which ultimately follow. (*Cf. In re Annexation to the City of Darien* (1973), 16 Ill.App.3d 140, 145.) In view of our holding that the facts existing at the time of hearing and final disposition are to control, the petitions are necessarily interrelated and accordingly a collective hearing on the petitions was appropriate.

■■ We must also conclude, contrary to the contentions of WFPD, that the issue of contiguity was not jurisdictional under the statute and could therefore be waived. Statutes must be reasonably construed so that they will be applied in a practical and common sense manner and so that absurd consequences will be avoided. (See *Rapacz v. Township High School District No. 207* (1971), 2 Ill.App.3d 1095, 1102.) Under

the statute, disconnection from the fire protection district of territory annexed to a municipality occurs automatically if the district does not file the required petition within 60 days. Under the automatic provision there is no reference to any precondition that disconnection cause territory remaining in the district to be contiguous. The fact that when a petition is filed under the statute the court is to consider the issue of contiguity does not make the issue jurisdictional any more than the determination which the court must make under the statute as to the impairment of valuation. In our view of the statute, neither determination raises a jurisdictional issue. It fairly appears that the legislative intention is to eliminate jurisdictional issues by making contiguity and impairment of valuation the bases for objection, where a fire protection district cares to raise them. Thus, the failure of the fire protection district to make proper objections to numerous annexations by the City of Wheaton resulted in automatic disconnection of these particular areas without regard to the issue of contiguity at the time of the automatic disconnection.

The argument of the district that it should be permitted to refile objections as to those areas held to have been automatically disconnected since it had relied upon the March 3, 1967, order stating that the statutory provisions were not applicable to any lands or properties within the WFPD as then constituted is not persuasive. The early order had been entered without notice or hearing as required by statute and was therefore properly vacated. Moreover, the record does not support the argument of the WFPD that it relied upon the March 3, 1967 order to its detriment. The evidence clearly indicates that it had been the policy of the WFPD to object to any disconnection caused by annexations to Wheaton and there was a standing policy that petitions be filed in all such cases. We cannot speculate as to the reasons why petitions were filed as to certain of the Wheaton annexations and not as to others. But in any case, the trial court's finding that WFPD could and in fact did waive objection to the issue of contiguity resulting from statutory detachments which occurred automatically due to a failure to file timely objection is not against the manifest weight of the evidence.

The trial court found that all of the territories which were automatically disconnected from WFPD by annexation to the City of Wheaton as to which the district failed to object "created noncontiguous territorial 'islands' from the balance of the Winfield F.P.D.," and that therefore, the district waived the issue of contiguity as to these non-contiguous territories. We agree. An examination of the exhibits and the record shows that the only areas remaining in the WFPD which are noncontiguous were created solely because of the automatic disconnections resulting

from City of Wheaton annexations to which no objections were filed. To the contrary, however, areas of noncontiguity are not created by disconnection of the annexed to which objections *were* properly filed.

There are no adverse practical results of the trial court's ruling as to the contiguity issue. According to the testimony of George Higgins, a trustee of the WFPD, and that of Donald Ludy, the fire chief of Wheaton, there will be little confusion in responding to calls for fire assistance in the areas within the City of Wheaton which are still in the WFPD. And Robert Stuart, trustee of the WFPD, testified that there would be no problems regarding access to those district areas within the Wheaton boundaries since the same streets and fire routes would still be used.

The remaining question concerns the ruling of the trial court that the disconnection from the district by annexations to Wheaton will not impair the ability of the district to adequately provide fire protection to the remaining territory nor impair the rights or obligations of the WFPD.

We may not disturb this finding unless it is against the manifest weight of the evidence. (See *Wood Dale Public Library District.; In re Roberts Park Fire Protection District*[3] (1974), 20 Ill.App.3d 282, 290-291.) In *Roberts* there was a clear example of impairment of the ability of the fire protection district which would have resulted from an approval of a disconnection of the territory of the district which was located in lands annexed to the Village of Bridgeview. The part disconnected from the fire protection district comprised some 30-35% of the total area of the district. Also, approximately 24.5% of the total revenue of the district resulted from tax assessments on the real estate annexed to the nearby village. It was manifest that the disconnection of that part of the fire protection district located within the village would have a grave and immediate affect on the territory remaining within the district leading the reviewing court to the conclusion that the order of disconnection should be reversed.

In *Wood Dale Public Library District v. Vil. of Itasca* (1974), 22 Ill. App.3d 922, supra, we considered a disconnection of territory from a library district under a statutory provision similar to the one before us. It had been argued that a disconnection of two parcels of land with assessed valuation of $100,990 from a library district which had a total valuation of $34,861,528. (.29%) would impair the ability of the library district to render adequate library services. We concluded that the petitioner had failed to sustain the burden of proof by competent evidence that the disconnection would result in the claimed impairment.

In the case before us based on the most recent assessment valuations

---

[3] Presently pending in the Illinois Supreme Court on the granting of leave to appeal.

available at the date of hearing, being those of 1972, it appears that the total assessed valuation of the WFPD was $44,344,615. The total assessed valuation of all areas of WFPD annexed to the City of Wheaton as of 1972 was $3,506,010 (7.91%). However, the total assessed valuation of those areas of the WFPD annexed by Wheaton to which statutory objection had been filed was $2,346,305, being only 5.29% of the total valuation.

George Higgins, the trustee of the WFPD, testified that the appropriation for the 72-73 fiscal year was $81,542 and that very close to that amount was levied. For the fiscal year 73-74 the appropriation was $99,250, the maximum amount levied was 2 mills and there was no outstanding bonded indebtedness. There was, however, a mortgage to finance construction of a new fire station over a 7-year period with annual payments of $38,000. Also, a portion of the yearly appropriation would go to an equipment reserve fund used for new equipment. Robert Stuart, a trustee of the WFPD, testified that the district was authorized to levy up to 3 mills without referendum and that such an increase could boost revenue by 50%. Although he stated that the disconnection would impair financial capacity he later testified that if revenues were increased by 50% there would be no difficulty in financing obligations under the mortgage. He further indicated that with such an increase the WFPD could begin transition from a volunteer to a part-paid, part-volunteer fire department which he considered an eventual necessity.

There was additional testimony that the WFPD had an unimpaired bonding power of 5% of the assessed valuation of the district, although it appeared that in the past this method of raising funds had not been used frequently because it required going to the voters.

■■ On this record the loss of valuation because of disconnection would be 5.29%; but if the maximum of 3 mills were levied, revenues of nearly 50% in excess of the present totals would be available. In addition the district has unimpaired bonding power. Under these circumstances it cannot be concluded that the finding of the trial court on the question of impairment is palpably erroneous.

■■ The WFPD cannot properly argue that there will be future annexations which could result in disconnections that would further impair the district's ability to provide adequate fire protection. The court must examine each proceeding according to the facts then existing and may not speculate as to the effect of future detachments. *Wood Dale Public Library District v. Village of Itasca*, (1974), 22 Ill.App.3d 922, 930.

Finally, the WFPD argues that the disconnection statute is unconstitutional because it violates due process and impairs the obligations of contract as to the taxpayers and bondholders remaining in the territory of the district after a portion thereof is disconnected. The WFPD, however,

did not raise these constitutional issues in the trial court and has therefore waived the right to bring the issues here. (See *People v. Amerman* (1971), 50 Ill.2d 196, 197.) Moreover, similar arguments which have been made in circumstances which parallel those here have been rejected. See *Bergis v. Village of Sunnyside* (1958), 13 Ill.2d 50, 52-53; *Punke v. Village of Elliott* (1936), 364 Ill. 604, 608-610; *Geweke v. Village of Niles* (1938), 368 Ill. 463, 466-468.

The judgment of the trial court is therefore affirmed.

Affirmed.

RECHENMACHER and HALLETT, JJ., concur.