THE VILLAGE OF ARLINGTON HEIGHTS, Petitioner-Appellant, *v.* ELSA C. GATZKE, Trustee, *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 79-1376

Opinion filed November 4, 1981.

Burke, Weber & Egan, of Chicago (Jack M. Siegel, Thomas T. Burke, and Robert J. Weber, of counsel), for appellant.

Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd., of Chicago (Champ W. Davis, Jr., and Stephen A. Gorman, of counsel), for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The village of Arlington Heights filed a petition to condemn 67 acres of defendants' property commonly known as Milbratz Farm for use as a drain and retention basin facility for flood control purposes. The farm is located on the east side of Windsor Drive, north of Palatine Road, in unincorporated Cook County. It is outside of but contiguous (except for its northern boundary) to the corporate limits of the village. The defendants, Elsa C. Gatzke and Adele M. Nitschke, filed motions to dismiss the petition. Following an evidentiary hearing, the trial court granted the motion to dismiss. The court found that the proposed project exceeded the power granted to the village and was thus an abuse of discretion and legally impermissible. The village appeals.

In 1972 exceptional rainfall caused substantial flooding throughout Arlington Heights. The village directed the engineering firm of R.J. Peterson & Associates to conduct a study concerning flood control. The firm prepared a comprehensive report suggesting several recommendations to prevent the reoccurrence of the flooding.

One section of the report discussed the problems in the McDonald

Creek watershed, an area of 5.16 square miles which includes the Milbratz Farm. A watershed is a catchment area wherein rain that falls into it ultimately drains to a particular point. The report noted that a significant percentage of the watershed is in unincorporated areas or part of neighboring communities.

According to the report, the McDonald Creek watershed area lacked an adequate outlet for storm runoff. The water level would rise in the creek to the point where there was no place for the water to go and flooding would ensue. The report proposed the construction of a permanent retention basin, Lake Arlington, at the bottom of the watershed to serve as an outlet for storm water runoff. The report referred to the possible secondary benefits of the proposal to the community, such as boating, fishing and general recreational activities. The project would require the village to acquire approximately 113 acres of land, including the Milbratz Farm.

The report also stated that many of the trunk sewers and natural water courses are inadequate to carry storm water to McDonald Creek. The report proposed the deepening and widening of the branches of the creek and the construction of additional sewers.

Robert J. Peterson, a consulting engineer for the firm which prepared the report, testified concerning the need for the proposed project. Peterson explained that the lake size would be approximately 73 acres. The remaining area would be dry and used for storage of water during an exceptional storm, for disposal of soil from the wet portion of the lake, and for landscaping. Peterson further explained that at the eastern end of the lake, a control facility would restrict the outlet of the water.

Ralph W. Lindley, an engineer and an expert in the area of storm water management, testified for the defendants concerning alternative engineering solutions to the village's flood conditions. Lindley asserted that the proposed lake would primarily benefit property located outside the village's boundaries. Lindley also testified that the purpose of a drain is to convey water downstream, while the purpose of a basin is to store the water at a specific location.

Allen J. Sander, the village's director of engineering, testified in rebuttal that a detention basin is, in fact, an enlarged drain. He asserted that Lake Arlington would convey water, but at a lesser rate than McDonald Creek.

The village asserts that its attempt to condemn Milbratz Farm in order to construct Lake Arlington is authorized by the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 1—1—1 *et seq.*). Section 11—110—1 (Ill. Rev. Stat. 1977, ch. 24, par. 11—110—1) provides in pertinent part that:

"The corporate authorities of cities and villages for drainage

purposes may lay out, establish, construct, and maintain drains, ditches, levees, dykes, pumping works, and machinery, and may acquire the necessary land and machinery therefor, * * *."

Section 11—110—3 (Ill. Rev. Stat. 1977, ch. 24, par. 11—110—3) provides in pertinent part that:

"Whenever, in the judgment of the corporate authorities of a city or village, it becomes necessary or advantageous for the proper construction of improvements specified in Section 11—110—1 to enlarge, construct, or improve a natural or artificial drain outside the corporate limits of the city or village to obtain a proper outlet, the corporate authorities have the power to acquire the right of way therefor under the provisions of the statutes relating to the exercise of the right of eminent domain."

A statute conferring the right of eminent domain must be strictly construed. (*Department of Public Works & Buildings v. Keller* (1975), 61 Ill. 2d 320, 335 N.E.2d 443.) The Illinois Municipal Code only authorizes the condemnation of property outside the village boundaries when the village determines it is necessary "to enlarge, construct, or improve a natural or artificial drain." The village maintains that the proposed Lake Arlington is in fact a drain. The defendants strongly disagree and assert that the 73 acre lake is a retention basin and *not* a drain.

The Illinois Municipal Code does not define the word "drain."[1] In the absence of a statutory definition indicating a different legislative intention, we must assume that "drain" has its ordinary and popularly understood meaning. (*Winfield Fire Protection District v. City of Wheaton* (1975), 29 Ill. App. 3d 630, 332 N.E.2d 43.) Drain has been defined as "an artificial channel by means of which liquid or other matter is drained or carried off[;] * * * a watercourse esp. when narrow." (Webster's New International Dictionary 685 (3d ed. 1971).) Both Lindley and Sander explained that the purpose of a drain is to convey water downstream. We believe that the word "drain" is popularly understood to describe a passageway, usually narrow, which facilitates or allows the flow of water.

We disagree with the village's assertion that Lake Arlington, when constructed, will be an enlarged drain. The purpose of the lake is not to facilitate the flow of the storm water but to store the water at a specific location. Peterson specifically testified that a control facility at the eastern end of the lake would restrict the flow of water from the lake. In our opinion, a drain and a lake are two distinct facilities with entirely different functions.

---

[1] However, see the Illinois Drainage Code where drain is defined as "any water course or conduit, whether open, covered or enclosed, natural or artificial, or partly natural and partly artificial, by which waters coming or falling upon lands are carried away." Ill. Rev. Stat. 1977, ch. 42, par. 1—2(d).

Pursuant to the Municipal Code, which we must strictly construe, the village may condemn property outside its boundaries in order to enlarge, construct or improve a drain. The statute is silent concerning the construction of a lake or basin. (But see Ill. Rev. Stat. 1977, ch. 34, par. 3106, which authorizes counties to construct and maintain reservoirs and holding basins, and Ill. Rev. Stat. 1977, ch. 42, par. 448, which empowers Surface Water Protection Districts to construct retention basins or other facilities necessary for the collection of surface water.) We cannot say that the proposed project is an attempt to enlarge or improve McDonald Creek, but rather it is a plan to convert a portion of the creek into a 73 acre lake. Thus, the village lacks the statutory authority to bring this condemnation action, and the trial court correctly dismissed the petition.

For this reason, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

RIZZI, P. J., and WHITE, J., concur.