This was a proceeding in the county court of Kankakee county for the organization of Soldier Creek Drainage and Sanitary District under the Levee act. The petition for the organization of the proposed district was circulated prior to April 7, 1923, and was signed by 307 persons who purported to be one-third of the adult owners of land within the proposed district and who represented a major portion, in area, of the lands sought to be benefited. The petition described the boundaries of the proposed district, the watershed, proposed starting point, route and termini, contained a description of the main sewer, open ditch and Grinnell branch and set forth the necessity for the improvement. It also contained paragraphs setting forth the employment of a certain engineer and an attorney, and provided that the petitioners would pay all costs, expenses and fees in the event the district should be dissolved. The attorney named therein was authorized to amend the petition, or any other paper relative to or connected with the proceeding, at any time he deemed the same necessary for the successful and legal organization of the proposed district. A general description of the lands to be affected, with the names of the owners, was attached to the petition. It was filed in the county court on April 7, 1923. Notice of hearing *Page 352 
on the petition was given, and on May 7, 1923, the court entered an order finding the essential facts required by the statute and appointed commissioners. The cause was continued to a day certain for the filing of the report of the commissioners and thereafter continued from time to time. Before the commissioners' report was filed the petitioners on July 11, 1923, moved the court to dismiss the petition and asked for leave to withdraw all files and exhibits, which motion was allowed by the court and the petition dismissed. On the next day the same petition was re-filed in the county court of Kankakee county. It appears from a stipulation in the record that when the petition was re-filed on July 12, 1923, the proposed district contained 1151.99 acres; that there were 594.246 acres of land in the district the owners of which had not signed the petition, and that within the proposed boundaries of the district were 206.46 acres which were already within and a part of Grinnell Special Drainage District. The proposed district included certain lots, streets and alleys, over twenty acres of public parks located in the city of Kankakee, and certain other acreage near the city, all of which were capable of being drained by the proposed improvement.
A hearing was had August 6, 1923, on the petition after due notice had been given, and an order was entered by the court on that date finding the court had jurisdiction of the parties and the subject matter; that the petitioners constituted one-third of the adult owners of land within the district, who represented a major portion, in area, of the lands to be reclaimed, and other essential facts required by the statute. Commissioners were appointed, who later filed their report. The four railroad companies who are appellants here filed objections to the report of the commissioners, which report was thereafter amended by eliminating a portion of the contemplated improvement to be done outside the district and reducing the estimated cost from $500,000 to $430,000. The objections were overruled, and *Page 353 
on September 21, 1923, the court entered an order confirming the commissioners' amended report and organizing the district. It is stated by appellants and not denied by appellee that the commissioners filed their assessment roll during August, 1924, and, after notice given, the same was set for hearing. Appellants made a motion to strike the roll from the files because the court had no jurisdiction of the subject matter, but so far as appears the motion was not acted upon by the court.
On November 28, 1924, the county court of its own motion entered an order finding the court was without jurisdiction in making its previous order of organization of Soldier Creek Drainage and Sanitary District, that such order was void, and the same was vacated and set aside. On the same date the petitioners' attorney and the commissioners moved the court to withdraw the report of the commissioners and the exhibits filed with it, to set aside the order of August 6, 1923, appointing the commissioners of the district, and for leave to amend the petition on file, which petition, when amended, should be known as the amended petition, and that when filed and presented the same be set down for hearing, and that notice be given as required in the case of an original petition. This motion was allowed by the court. The record does not show the reason or ground upon which the court based its order vacating the organization of the district, though it is stated in the brief of appellee that the reason therefor was that certain lands were included within the proposed district which were already within and a part of Grinnell Special Drainage District.
On December 8, 1924, the petitioners filed an amendment to the petition, changing the boundaries, the proposed starting point, routes and termini, the lands to be affected, and reducing the acreage embraced in the proposed district from 1151.99 acres to 965.75 acres. The amendment to the petition as presented at this time was not signed by any person *Page 354 
or attorney. Upon the filing of the amendment to the petition it was ordered by the court that the original petition, together with the amendment thereto, be thereafter treated as one petition, and that the amended petition be set for hearing and notice thereof given as provided by section 3 of the Drainage act. Due notice was given, and appellants, together with additional owners of property affected by the improvement, filed various objections to the amended petition, by some of which the jurisdiction of the court was challenged for the reason that no valid petition was on file in the cause. It appears that several hearings were had upon the amended petition and the objections thereto, evidence was introduced and arguments presented to the court, but before the court passed upon any of the questions presented, petitioners again moved the court for leave to amend their petition by changing the boundaries, thereby reducing the acreage in the proposed district from 965.75 to 745.78 acres. To this amendment appellants objected, but the objections, together with all previous objections filed, were overruled and the amendment allowed to be filed on April 8, 1925. Thereupon appellants filed additional objections, again raising the question that the court was without jurisdiction and that there was no valid petition on file. It appears that several hearings were had thereafter, and a stipulation containing some of the facts involved in the case was entered into July 30, 1925, and the cause thereafter continued from time to time until November 16, 1925, at which time the court entered an order finding that the petition, the amended petition, and the petition as again amended on April 8, 1925, were each sufficient in law, signed by the necessary number of land owners owning the required area of land, and that the court had jurisdiction. At this time commissioners were appointed. The commissioners reported in December, 1925, to which report objections were filed by appellants. At a hearing thereon on January 6, 1926, the objections were *Page 355 
overruled and an order entered by the court confirming the report of the commissioners and organizing the drainage district. From that order appellants were allowed and have prosecuted an appeal to this court.
The chief errors relied upon by appellants for reversal are, (1) that the petition when filed July 12, 1923, was functusofficio; (2) that the petition filed July 12, 1923, was void because (a) there were included within the boundaries of the proposed district more than 200 acres of land lying within another active drainage district; (b) the proposed main sewer of the district will follow the course of a large sewer built by the city of Kankakee, and included within the district are lands in the city of Kankakee having a system of sewers over which the city has exclusive control; and (c) the petition was not signed by one-third of the adult owners owning a major portion of the lands within the proposed district; (3) that the petition being void it could not be amended and thereby be made valid; (4) that the petition as amended December 8, 1924, did not contain one-third of the adult owners owning a major portion of the lands within the proposed district; and (5) that the whole proceeding is void for want of jurisdiction of the subject matter.
It is the contention of appellee that the petition when filed in the county court on July 12, 1923, was sufficient, and that the petition when amended and filed on December 8, 1924, was legal in every respect and was acted upon, treated and considered as an original petition. There was but one petition circulated and signed prior to April, 1923, by the persons seeking the organization of the drainage district, and the same petition, with its several amendments, was the one used throughout the proceedings. The motion of the petitioners seeking to amend the petition previously filed and made to the county court on November 28, 1924, as well as the court order of December 8, 1924, allowing such amendment, referred to and designated such instrument *Page 356 
as the amended petition. Moreover, the amendment to the petition as offered and made on December 8, 1924, was not signed by any person or attorney, and necessarily could not be termed or considered as an original petition.
The conclusion we have reached in this case after a consideration of the briefs and argument of counsel does not necessitate discussing at length each of the points presented by appellants. Under the facts disclosed by the record we do not consider appellants' contention that the petition when re-filed in the county court of Kankakee county on July 12, 1923, was functus officio to be well founded. It is true the petition had been previously filed in the same court, a hearing had thereon, some orders entered and commissioners appointed, but prior to any report from the commissioners or any order of organization being entered, the petitioners by their attorney sought the withdrawal of all exhibits and the dismissal of the petition. No petitioner ever complained of the act of the attorney in either the withdrawal of exhibits, the dismissal of the petition on July 11, 1923, or the re-filing thereof on the following day. No other or different proceeding had been started, or even contemplated, so far as the record shows, whereby any or all of the same owners of lands would be included within a proposed drainage district. It would seem under the state of facts presented that the petitioners, acting as a unit, had a right to request the withdrawal of their petition at the time.
Under appellants' second, third and fifth errors assigned and relied upon a more serious question as to the legal organization of the district is presented. We think those errors may be considered collectively. It is unnecessary to set out in detail the various statutory provisions governing the formation of drainage districts under the so-called Levee act. (Smith's Stat. 1925, chap. 42, p. 997.) County courts derive their power to establish drainage districts from the statute, alone, and in organizing drainage districts under the Levee act such courts exercise a special and limited *Page 357 
jurisdiction. The General Assembly having authorized the creation of drainage districts upon certain conditions, they must be complied with and the petition must be such as the statute prescribes. The jurisdiction of the court can be called into action only by the presentation and filing of a petition, which must comply with the statutory requirements. (Aldridge v. Clear Creek Drainage District, 253 Ill. 251;Drummer Creek Drainage District v. Roth, 244 id. 68.) The evident purpose of the statute was that those who would be specially assessed to pay the costs of the improvement should know from the petition specifically what was proposed to be done and what lands were to be affected, so as to form a judgment as to the necessity or propriety of the work and its advantages or disadvantages. Section 2 of the Levee act provides that the petition must be signed by a majority of adult land owners who represent at least one-third, in area, of the lands proposed to be affected, or by one-third of the adult owners who represent a major portion of said lands in area. InDrummer Creek Drainage District v. Roth, supra, this court said: "A petition signed by the proper number of persons representing the area required by said act is necessary and jurisdictional in order to form a legal drainage district." It was also stated in that case that an original petition should be so drawn that it can be ascertained therefrom that it is signed by owners representing the necessary proportion of individuals and acreage, and the boundary lines should be so definite that they can be traced on the map. By the petition in this proceeding it was intended to secure one-third of the land owners and a majority of the lands in area. It was stipulated by the parties to this cause that when the original petition was filed in the county court on July 12, 1923, there were 1151.99 acres of land within the boundaries of the proposed district, and that there were 594.246 acres therein the owners of which had not signed said petition. A majority, in area, of the lands within the *Page 358 
proposed district was 576 acres. Hence it will be seen the original petition, when filed, contained the names of owners of land who represented 18.256 acres less than a major portion of the lands within the proposed district, and therefore the petitioners did not represent a majority of the land, in area. Though the court found that the petition contained one-third of the owners representing a major portion of the lands, in area, within the proposed district, nevertheless this could not have been correct and is in direct conflict with the agreed stipulation between the parties appearing in this record. Section 4 of the Levee act provides, among other things: "The court, upon application of the petitioners, shall permit the petition, affidavit and orders to be amended," etc. It is true, the petition here involved was amended, whereby the acreage was first reduced on December 8, 1924, from 1151.99 acres to 965.75, and again on April 8, 1925, from 965.75 acres to 745.78 acres, but we know of no authority whereby such amendments and reductions in acreage can be made by the petitioners from time to time for the purpose of producing the necessary proportion of signers and acreage and thereby give the court jurisdiction. The petition in this class of cases is jurisdictional, and we are of opinion the original petition was insufficient to confer jurisdiction upon the county court because of its failure to contain the signatures of adult owners representing a major portion, in area, of the lands within the proposed district. The petition was further defective in that it contained over 200 acres included within another drainage district. (People v. Crews, 245 Ill. 318; People v. Lease, 248 id. 187.) Where the record shows that the county court did not have jurisdiction of the subject matter in a drainage case its attempted judgment or order is a nullity, notwithstanding the fact it may have found that it did have jurisdiction. (People
v. Swearingen, 273 Ill. 630.) If the court was without jurisdiction on account of the petition being defective when originally filed in July, 1923, then undoubtedly *Page 359 
it had no authority to authorize or order an amendment made to such petition. The petition as originally filed was fatally defective and furnished no legal basis for the amendments offered. Drummer Creek Drainage District v. Roth, supra;Hansmeyer v. Indian Creek Drainage District, 284 Ill. 458.
The order of the county court is reversed and the cause remanded.
Reversed and remanded.