First National Bank, Not Individually, But as Cotrustee Under the Last Will and Testament of David Mark Cummings, Deceased et al., Appellees, v. Village of South Pekin, Appellant.

Gen. No. 9,212.

April term, 1939.
Opinion filed January 15, 1940.

Heard in this court at the

Louis P. Dunkelberg, of Pekin, for appellant; Harold J. Rust, of Pekin, of counsel.

Ralph Dempsey, of Pekin, for certain appellees.

Velde & Prettyman, of Pekin, for certain other appellee; Nelson Trottman, of Chicago, of counsel.

E. E. Horton, of Peoria, and Alfred W. Black, of Pekin, for certain other appellee; E. C. Craig and Charles A. Helsell, both of Chicago, of counsel.

Mr. Presiding Justice Riess delivered the opinion of the court.

In this case, the defendant, Village of South Pekin, has appealed from a final order of the county court of Tazewell county entered on August 15, 1938, disconnecting from the village certain areas of land of the petitioners alleged to comprise 20 or more acres located on the border or boundary of the village and not subdivided into lots and blocks, which proceedings were had under the provisions of an act entitled "An Act providing for the disconnection of land from cities, towns and villages" (Laws of 1935, p. 300), being ch. 24, secs. 385d–385g, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 21.403(1)–21.403(4)].

The pertinent sections of the act provide:

"§ 1. The owner or owners of any area of land consisting of one or more tracts, lying within the corporate limits of any city, town or village, may have the same disconnected from such city, town or village under the provisions of this act if such area of land

"(1) Contains twenty (20) or more acres;

"(2) Is not subdivided into city lots and blocks;

"(3) Is located on the border or boundary of the city, town or village;

provided, however, that such disconnection shall not result in the isolation of any part of the said city, town or village from the remainder of such city, town or village.

"§ 2. The owner or owners of any such area of land who desire such disconnection shall file a petition in the County or Circuit Court of the county where the land, or the greater part thereof, is situated, and in such petition shall allege facts in support of such disconnection. The particular city, town or village shall be made defendant, and it, or any taxpayer resident in such municipality, may appear and defend against such petition. If the court finds that the allegations of said petition are true and that such area of land is entitled to disconnection under the provisions of Section 1 of this Act, it shall order said land disconnected from such city, town or village."

The original petition was filed by the First National Bank and Dexter Cummings as cotrustees under the will of David Mark Cummings, deceased, and Henry H. Benjamin and Forrest N. Williams, who were co-owners of the following lands lying within and sought to be disconnected from said village, viz.: tract one (E½ SW¼, sec. 27, except 1.14 acres in southeast corner thereof, being 78.86 acres); tract two (NE¼ SE¼, sec. 27, diagonally bisected by right of way strip owned in fee simple by railroad companies into tracts of 23 acres lying northwest of said right of way and 13.40 acres lying southeast thereof), and tract three (NE¼ NE¼, sec. 34 being 39 acres). Subsequently, by leave of court, the several continuous right of way tracts owned in fee by said railroad companies, to wit: tract four (3.60 acres, being right of way strip owned in fee by both the Illinois Central and the Trustees of Chicago & Northwestern Railroads and bisecting tract two as above); tract five (3.54 acres owned by the Illinois

Central Railroad and extending along and on both sides of the east line of SE¼ of sec. 27), and tract six (2.05 acres owned by the Illinois Central Railroad extending along and on both sides of the east boundary line of NE¼ NE¼, sec. 34, and lying within said village) were by an intervening petition filed upon leave of court, also included and a subsequent amended petition specifically describing all six of said tracts was filed by all of said land owners. Motions of the defendant to strike the intervening and subsequent amended petition were overruled by the trial court, and upon evidence heard, a decree providing for disconnecting all six of said tracts was granted. Defendant wrongfully appealed to the Supreme Court and the cause was transferred to this court for hearing on the appeal.

It is conceded by all parties that tract one of 78.66 acres; the part of tract two lying northwest of the railroad right of way and consisting of 23 acres which we will refer to as tract 2a, and tract three, consisting of 39 acres, might each have been properly disconnected from said village under the original petition, as meeting all the requirements of said act, unless such disconnection of tract three would thereby isolate tract six (being the right of way extension along the east side thereof).

It is contended by the village that the portion or area of tract two lying southeast of said railroad right of way and consisting of 13.40 acres, which we will designate as tract 2b, is completely separated from the above 23 acre tract by the intervening railroad right of way, tract four; that tracts 2a and 2b are separate tracts and areas, and tract 2b, of a less area than 20 acres, cannot be so disconnected; that tract four of 3.60 acres, tract five of 3.54 acres and tract six of 2.05 acres, all constituting the railroad rights of way described in the intervening petition and in the subsequent amended petition, cannot be disconnected from said village because said tracts are separately owned from tracts one,

two and three and do not comprise an area or tract of 20 or more acres as required by said act.

The petitioners contend to the contrary that the language of the act and intent of the legislature was to permit the owners of separate tracts of land to join together for the purpose of being disconnected from the village if the gross area or respective areas of all such tracts when joined together comprise 20 acres or more and that they thereby meet the acreage re-

quirement of the statute, irrespective of the size or number of separate tracts and owners so joining together to comprise such gross area.

In the case of *Punke v. Village of Elliott,* 364 Ill. 604, 5 N. E. (2d) 389, Punke had filed a petition in the circuit court of Ford county under the provisions of the above act of 1935 to disconnect a tract of land containing substantially 100 acres from the Village of Elliott, and one Dickerman, owner of a tract of 16.66 acres on the boundary of the village and a tax payer in, but not a resident of the village was, by leave of court, also permitted to become a party defendant. Separate motions in the nature of demurrers were filed by said defendant and the village, which were overruled, and the defendants elected to stand by their motions. An order disconnecting petitioner's land was thereupon entered, from which order the village alone appealed to the Supreme Court.

In passing upon the validity of the above provisions, the court, speaking through late Chief Justice HERRICK, freely discussed the apparent intent and purpose of the legislature in the passage of the amended act and its application to the facts in that case, and what was there said is of material assistance to this court in construing and applying the above act to the facts in the case at bar as indicative of the intention of the legislature, in permitting the owner or owners of tracts containing 20 acres or more to become disconnected from the village where such acreage was not subdivided and was located on the boundary or border of said village and was thereby subjected to excessive tax burdens with little or no benefits in return therefor, although smaller tracts suitable for various purposes were not included in such classification because of the more diverse uses and purposes to which they might be put, as therein indicated.

In discussing the above provisions, the court in that case said at p. 610:

"The act applies to the owners of all tracts of land of twenty acres or more not subdivided into lots or blocks located on the boundary line of any city, town or village, where such disconnection would not result in the isolation of any part of such municipality."

It is there further said that:

"Appellant contends the classification of tracts which may be disconnected being limited to those of a minimum of twenty acres is unreasonable. . . . The basis of the act here is acreage or size—not valuation or population, as is frequently the foundation of legislative acts. Size, where the circumstances justify it, may properly be assumed as the index of legislative enactments. *People v. Stokes,* 281 Ill. 159, 168.

"The legislature has determined that an evil exists in compelling owners of tracts of twenty acres or more, not subdivided and which border a city or village, to pay taxes for urban benefits. It is obvious that unsubdivided tracts of this size do not possess any characteristics of city or village property. They receive no practical benefits from being within the limits of such municipality and contributing, by paying taxes, to the expense of the maintenance and administration of such local governmental agency. It is true that tracts of less than twenty acres may likewise receive no benefits for the local taxes paid, but that is a criticism addressed against the legislative wisdom rather than a constitutional defect.

"Appellant urges, as an argument against the validity of the statute, that Dickerman, with his 16.66 acres and a hypothetical owner of a 19.5-acre tract were illegally discriminated against by setting the index at twenty acres. If that principle is sound, which we do not believe it is, then such complaint might be made against the classification of counties, which have populations as their index, on which certain types of fees and salaries are based. . . . The legislature may have had in mind that acreage of twenty acres would con-

stitute a small farm and would ordinarily be used for that purpose, while smaller areas might have possibilities as sites for oil stations, bulk plants, road houses, taverns, amusement parks, and other activities which often enter into urban life and constitute such latter premises integral parts of the municipality. If the property subject to severance were fixed at a minimum of ten acres, by the same reasoning as is urged here against the classification the owner of a 9.99-acre tract or an acre-tract not subdivided would have a like cause of complaint against the reasonableness of the legislative grouping.''

In *Town of Gypsum v. Lundgren,* 61 Colo. 332, 157 Pac. 195, cited by the appellee herein, it may be noted that the language of the statute under construction therein expressly reads that ''whenever a tract or *contiguous* tracts of land *aggregating* twenty or more acres in area'' (italics ours) seek disconnection, this express provision was properly held in that case to permit more than one owner of contiguous tracts aggregating such acreage to join in a petition for disconnection. No such express language or provision appears in the Illinois Act of 1935.

The Appellate Court case of *Gilbert v. Morgan,* 98 Ill. App. 281, also cited by appellee, was one wherein the statute provided for such petition by ''owners representing a majority of the area of land of any territory within any city or village,'' etc., to the city council or village board for disconnection. In that case the classification of acreage was not made and did not control, which classification was held in the case of *Punke v. Village of Elliott, supra,* to be a proper one and controlling under the provisions of the act of 1935.

Similarly, the classification into tracts of 10 acres or more, where the same were used for agricultural purposes only, under the act of 1933, was condemned and held invalid in the case of *Forsythe v. Village of Cooks-*

*ville,* 356 Ill. 289, 190 N. E. 421, as special legislation because it limits the disconnection of a tract of that acreage to lands used for agricultural purposes only and because of one other requirement therein not appearing in the present statute; not, however, finding fault with the express requirement that the tract contain 10 acres or more in area, reciting (p. 291) as follows:

"The act purports to give to the owner of a tract containing ten acres or more, used exclusively for agricultural purposes, not subdivided and not bounded on more than two sides by subdivided lands and located on the border or boundary of a municipality, the right to have such land disconnected therefrom. It denies that right to the owner of a tract which may be in part used for some other purpose."

Concerning the construction of statutes providing for the disconnection of territory from a city or village upon petition of property owners, it was early held (1874) that the language of the legislature "being in derogation of the common law, it should be construed strictly, and the city, and others interested, might properly insist that nothing should be taken in favor of the petitioners by intendment merely." *City of Galesburg v. Hawkinson,* 75 Ill. 152, 155.

Here, it cannot be fairly said that the railroad properties, furnishing freight and passenger service to the public, much of which property, including its depot, switches and sidings, immediately adjoin and are reached and served by the village streets and would be so served by lights, water, drainage, police and fire protection or other improvements and benefits common to property owners of a city or village government, does not possess "urban benefits" or "do not possess any characteristics of city or village property" or that "they receive no practical benefit from being within the limits of such municipality and contributing, by paying taxes, to the expense of the maintenance and

administration of such local governmental agency.''
On the contrary, they peculiarly serve the public and
receive benefits from such local governmental agencies,
and unless they constitute areas or tracts of 20 or more
acres and otherwise meet the requirements of said act,
we hold that they cannot, by combining smaller acre-
age with other property owners, bring themselves
within the language and intent of the above statutory
provisions, and thereby avoid all burdens incidental to
such local government.

We further hold that since tracts five and six con-
stitute a continuous right of way, tracks, siding and
railroad property of the Illinois Central Railroad, no
part thereof would be isolated from the remainder of
the village by disconnection of tract three. That por-
tion of said railroad right of way and of tract five, upon
which its depot, buildings and much of its switches and
yards are principally located, immediately adjoins and
is served by the subdivided streets and is adjacent to
the lots and blocks of said village and located on the
SE¼, section 27, as shown on the exhibited plat thereof
appearing in the record. Tract six is a southerly con-
tinuation of said tract five from said depot and subdi-
vision and lying within said village; all being a con-
tinuous part of said right of way and railroad property.

Separate ''Tract 2B,'' containing 13.40 acres,
touches no boundary line of the village, since it is
bounded on the east by railroad ''Tract Five'' and
therefore does not meet such statutory requirement,
nor does this tract meet the minimum acreage require-
ment of the act. Similarly, if the statute were con-
strued in accordance with appellees' contentions, nu-
merous adjoining tracts having separate owners and
small acreage, only one of which was located on the
boundary line, could by the simple expedient of uniting
their properties in the same petition, avoid both the
minimum acreage and boundary line requirements ex-

pressly set forth in the act and thus nullify its purpose and intent, as indicated in the *Punke* case, *supra,* and as we construe it herein.

It is contended by the appellant that it was error for the trial court to permit other property owners to intervene in the pending cause because the same was instituted under a special statutory proceeding. With this contention, we cannot entirely agree, since the Civil Practice Act controls in all matters of procedure wherein the special statutes are silent.

In *Wintersteen v. National Cooperage & Woodenware Co.,* 361 Ill. 95, 197 N. E. 578, it is said at p. 109:

"Where there are express provisions in the special statutes relating to procedure those provisions will necessarily control, but where the special statutes are silent as to any mode of procedure which is contemplated or required by a general law then the provisions of the general law may be applied."

Concerning the application of the Civil Practice Act to proceedings regulated by special statutes, rule 2 of the Supreme Court (ch. 110, sec. 259.2, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 105.02]) provides that "the separate statutes shall control, to the extent to which they regulate procedure in such actions, but the Civil Practice Act shall apply to matters of procedure not so regulated by separate statutes."

The law does not encourage a multiplicity of suits when the same object can be satisfactorily attained in one suit.

However, while we believe that another land owner or land owners, joint or co-owner, of tracts properly coming within the purview of said act might intervene and be disconnected in a case meeting all the requirements of the above statute, we hold that the intervening petition herein should have been stricken upon the motion of the defendant because the same did not state sufficient facts to bring the intervening petitioners

within the requirements of the statute; nor should the motion to strike the amended petition have been denied, for the same reason.

We further hold that the county court of Tazewell county erred in disconnecting tracts four, five and six described in its decree and the amended petition and in so disconnecting that portion of tract two herein identified as tract 2b from the Village of South Pekin.

The decree and judgment of the county court of Tazewell county will therefore be reversed and the cause remanded to said court with directions to proceed in accordance with the holdings herein.

*Reversed and remanded with directions.*