SUN ELECTRIC CORPORATION, Plaintiff-Appellant, *v.* THE VILLAGE OF PRAIRIE GROVE, Defendant-Appellee.

Second District No. 76-531

Opinion filed April 26, 1978.

Otis H. Haleen, of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellant.

Stewart H. Diamond, of Ancel, Glink, Diamond & Murphy, of Chicago, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

This is a disconnection proceeding commenced by the petitioner, Sun Electric Corporation (Sun Electric), in which it seeks to disconnect 91 acres of land owned by it from defendant, Village of Prairie Grove (Prairie Grove) in McHenry County. The trial court held that a statutory requisite for disconnection had not been met and dismissed the petition. Sun Electric appeals from that order.

The relevant statute, section 7—3—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 7—3—6), provides, in part, that:

> "The owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality may have such territory disconnected which (1) is not contiguous in whole or in part to any other municipality; (2) contains 20 or more acres; (3) is not subdivided into municipal lots and blocks; (4) is located on the border of the municipality; (5) if disconnected, will not result in the isolation of any part of the

municipality from the remainder of the municipality, (6) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted, (7) if disconnected, no substantial disruption will result to existing municipal service facilities, such as, but not limited to, sewer systems, street lighting, water mains, garbage collection and fire protection, (8) if disconnected the municipality will not be unduly harmed through loss of tax revenue in the future. The procedure for disconnection shall be as follows:

The owner or owners of record of any such area of land shall file a petition in the circuit court of the county where the land is situated, alleging facts in support of the disconnection. * * *If the court finds that the allegations of the petition are true and that the area of land is entitled to disconnection it shall order the specified land disconnected from the designated municipality. If the circuit court finds that the allegations contained in the petition are not true, the court shall enter an order dismissing the petition."

The parties agreed by their pleadings that all the requirements of the disconnection statute had been met, except for subsections (6) and (8), and these, then, raised the only contested issues before the trial court. Following an evidentiary hearing, the trial court held that the requirements of subsection (6) were met in that disconnection would not unreasonably disrupt the growth prospects and plan and zoning ordinances of the village, but dismissed the petition on the ground that the requirement of subsection (8) was not met in that the village would be unduly harmed through loss of tax revenues in the future by the disconnection.

On appeal Sun Electric contends the trial court's holding that the village would be unduly harmed through loss of tax revenues in the future is against the manifest weight of the evidence.

Sun Electric owns approximately 91 acres located on the southeast border of Prairie Grove, upon which is located its manufacturing plant and offices. The village was incorporated in 1973 and is substantially undeveloped, having few residences or commercial establishments within the corporate limits. It provides no sewer, water or fire service or other similar municipal facilities, but does undertake to maintain its roads, which are unpaved and in need of repair. The principal village expenditures are for legal services and road maintenance. Its only capital expenditure since incorporation was the financed purchase of a truck to be used for road maintenance. Other equipment purchases were being considered by the village board at the time of the hearing and the construction of a garage to house its equipment had also been discussed. An audit for the most recently completed fiscal year, 1975, disclosed that

after expenditures of $30,379 for that year the total village funds were left with a deficit balance of $3,841.

Philip J. Butzen, an attorney and real estate broker who is president of Urban Economics, Ltd., was called by Sun Electric to testify as an expert witness and give his opinion as to whether the disconnection of Sun Electric's property would unduly harm the village through loss of tax revenues in the future. The village made no objection to Butzen's qualifications and he testified that the methodology employed by him in formulating his opinion on this matter included collecting data from various local and State governmental agencies, interviewing village officials and reviewing audits of the village for the fiscal years ended April 30, 1974, and April 30, 1975, along with reports filed by it with the State of Illinois Comptroller's Office. As a part of his research and analysis, Butzen prepared several tables demonstrating different views of the financial position of the village and the relative importance of the tax revenues derived from Sun Electric to the village projected into future years.

Based on his research and analysis Butzen testified that in his opinion Prairie Grove would not be unduly harmed by the disconnection of the Sun property through loss of tax revenues in the future. In reaching this conclusion he relied, in part, on the projection in one of his tables that while revenues from the taxation of Sun Electric would amount to approximately 26% of all revenues available to the village for the fiscal year ending April 30, 1976, the percentage share of the total revenues received from Sun Electric would decline to about 12.45% by the end of the fiscal year 1981 and would be further reduced in subsequent years. It was his opinion that this loss of revenue, if the disconnection were allowed, would not unduly harm the village.

In addition, Butzen testified there were other sources of revenue available to replace the monies which would be lost to the village by the Sun Electric disconnection. These other sources could include a levy for municipal auditing purposes, a corporate bridge and street tax levy, and a vehicle license tax. He stated that implementation of each of these revenue sources would require only corporate action and could be imposed immediately without referendum. In addition, he stated that because road maintenance and repair was the main expenditure of the village it might be a wise procedure in the future for the village to have any special road improvements paid for in part by special assessment of the benefitted property owners rather than entirely by the municipality, and thus reduce the financial burden of the village. No contrary evidence was submitted by Prairie Grove to rebut Butzen's opinion that the village would not be unduly harmed by this disconnection.

In its memorandum decision the trial court found that the loss of tax revenue in the future if the disconnection were allowed would unduly

harm the village. The court, in considering the tax loss projections made by Butzen, concluded that they were sufficient to preclude disconnection of Sun Electric's property under the statute.

While we will not disturb the trial court's finding as to whether the statutory requirements for disconnection were established by the evidence unless such determination is clearly contrary to the manifest weight of the evidence (*Anderson v. City of Rolling Meadows* (1956), 10 Ill. 2d 54, 58, 139 N.E.2d 199, 201; *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 214, 225 N.E.2d 33, 36), we believe that in the present case the trial court's finding that the village would be unduly harmed through loss of tax revenues in the future by this disconnection has insufficient support in the evidence and must be reversed.

This court has previously considered this same disconnection statute in *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 225 N.E.2d 33, where it was determined that the statute was intended to provide a means for disconnection of land from a municipality if its requirements were met and that it should be given a liberal construction. In addition, it was held that the trial court possesses no discretion to deny a petition brought under the statute if all of the elements necessary to a disconnection are found to exist.

Since subsection (8) was added to section 7—3—6 of the statute by amendment in 1965, no reviewing court of this State has had occasion to construe it. In determining whether Prairie Grove will be *unduly harmed* if Sun Electric's land is permitted to be disconnected from it we must consider the statutory language in a reasonable manner and consider its words and phrases in their ordinary, usual meanings consonant with the context in which they are used. *La Salle National Bank* (1967), 81 Ill. App. 2d 209, 217-18, 225 N.E.2d 33, 37-38.

Some guidance as to how the phrase *unduly harmed* should be applied in the present case can be found in the recent supreme court opinion of *In re Roberts Park Fire Protection District* (1975), 61 Ill. 2d 429, 337 N.E.2d 8. There the fire protection district sought to prevent the disconnection from its corporate limits of territory which had annexed to the village. The pertinent statute provided that such disconnection would be allowed unless the loss of that portion of the fire district's tax base represented by the territory annexed to the village would "impair the ability of the district to render fully adequate fire protection service to the territory remaining with the district." (Ill. Rev. Stat. 1965, ch. 127½, par. 38.3.) Under the evidence that the reduction of its tax base by disconnection of the village territory would cause a 25% loss in revenue to the fire protection district, the district urged that disconnection be denied. Other evidence

established that the district could, by referendum, increase its maximum corporate tax rate from .30% to .40% and could, again by referendum, levy an ambulance service tax at a rate not to exceed .25% to support that phase of its services. In addition, a witness who was qualified to do so expressed his opinion that the ability of the fire district to serve the remaining portion of the district, should the village territory be disconnected, would not be financially impaired under these circumstances. The court noted that disconnection would naturally cause a decrease in the district's tax base resulting in a corresponding loss of tax revenue to it, but that such loss of revenue would have no significance to the issue of disconnection unless it caused the impairment of fire protection service contemplated by the statute. The court further noted that "[t]he legislature was aware that the financial loss resulting from a disconnection might necessitate a tax increase, and it certainly was not its intent to defeat a disconnection in order to avoid a tax increase. See *Trustees of Schools v. School Directors,* 190 Ill. 390; *School Directors v. Wolever,* 26 Ill. 2d 264" (*In re Roberts Park Fire Protection District* (1975), 61 Ill. 2d 429, 438, 337 N.E.2d 8, 13), and it held that under the circumstances presented the fire protection district failed to establish that the loss of 25% of its revenue would result in material impairment of its ability to render fully adequate fire protection to the remaining territory.

Prairie Grove contends that the true test of whether it will be unduly harmed by the disconnection is the degree to which it will be impaired in its ability to perform its corporate purposes. It asserts this cannot be determined absent evidence of the future needs of the village which should have been but was not produced by Sun Electric. We are urged to consider, in this regard, the evidence that the village had a deficit balance in its total funds, that its roads were unpaved and in need of repair and that it was considering the purchase of other road maintenance equipment and a garage. Prairie Grove concludes that because no projections of its future fiscal requirements were produced, Sun Electric failed to establish that undue harm would not result from its disconnection.

■■ We find little merit in this argument. The statute does not set forth the manner in which lack of undue harm through loss of future tax revenues must be shown; however, it seems apparent that Butzen was aware of the village's road repair needs and the deficit balances in its corporate funds and considered these when rendering his opinion. That he did not project the future village expenses for the trial court does not destroy the validity of his opinion and the village produced no evidence of its future requirements except for the possibility of purchasing some road equipment and constructing a garage to house it. While another

expert might have found such a projection useful and criticized Butzen's opinion in that regard, no witness was called to so testify and the village did not challenge Butzen's opinion in the trial court.

■■ Nor do we believe that the further argument of the village, that Butzen had insufficient foundation from which to render his opinion, has validity. The expert's opinion was, in part, based upon projections he had made of the future population growth of the village and expected increase in its tax base to demonstrate the attendant increase in tax revenues the village might expect. Again, the village seeks to argue against evidence it did not attempt to rebut in the trial court. The foundation upon which Butzen based his opinion appears to us to be reasonable and in support of the conclusions he has drawn in this case. There is no contrary evidence.

■■ The only evidence before the trial court was that the revenue loss at the time of this disconnection would equal approximately 26% of the total village revenues, but that within five years such loss would decline to 12.45%, that the village had numerous other sources of tax revenue it might call upon which would reduce the loss of tax revenue from Sun Electric even further and possibly absorb it, and that a qualified expert, the only such witness who testified, stated that in these circumstances the village would not be unduly harmed through loss of tax revenues in the future. No contradictory evidence was produced in trial by the village. Under these circumstances we find that the requirements of subsection (8) of the statute were met and that the contrary determination of the trial court is against the manifest weight of the evidence. See *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.* (1976), 39 Ill. App. 3d 1035, 1042, 351 N.E.2d 264, 270.

Prairie Grove also contends that Sun Electric failed to establish the requirement of subsection (6) of section 7—3—6 that the "zoning [ordinance], if any, of such municipality will not be unreasonably disrupted* * *" by the disconnection. The only evidence relating to this issue produced by either party was also by means of the testimony of Mr. Butzen. It was his opinion, based upon his personal inspection of the land and buildings in the village, that any zoning classifications of the remainder of the village would not be affected by the disconnection of Sun Electric's property. On cross-examination Butzen testified he had not seen a village zoning ordinance or map and that he did not know the percentages of village land devoted to the various use classifications of any such ordinance. Prairie Grove now argues that Butzen's opinion is again without foundation and must be disregarded.

■■ We do not agree. Butzen, whose qualifications as an expert witness in these matters are not challenged in this case, believed he possessed sufficient knowledge of the uses made of the village land to express his

opinion that removal of Sun Electric property from the border would not disrupt any zoning plan which might exist. If there is such a zoning ordinance which has been adopted by the village it was not made a part of the record in this case. Counsel has referred to such ordinance in trial and here but it is not before us nor does it appear it was considered by the trial court. We find that Sun Electric met the requirements of section (6) and will not disturb that determination of the trial court.

For the reasons expressed herein the order of the trial court dismissing Sun Electric's petition to disconnect is reversed and the cause is remanded to the trial court with directions that it enter an order granting the petition.

Reversed and remanded with directions.

RECHENMACHER and WOODWARD, JJ., concur.