*In re* DISCONNECTION OF CERTAIN TERRITORY FROM THE VILLAGE OF MACHESNEY PARK (Illinois National Bank and Trust Company of Rockford, Petitioner-Appellee, *v.* The Village of Machesney Park, Respondent-Appellant).

Second District    No. 83—123

Opinion filed March 22, 1984.

Joseph L. Long, of Barrick, Jackson, Switzer, Long & Balsley, of Rockford, for appellant.

Curtis D. Worden, of Rockford, for appellee.

JUSTICE HOPF delivered the opinion of the court:

The village of Machesney Park (Village) appeals from a judgment of the circuit court of Winnebago County which granted a petition to disconnect two tracts of real property from the Village pursuant to sections 7—3—1, 7—3—2, and 7—3—3 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, pars. 7—3—1, 7—3—2, 7—3—3). The Village contends on appeal that: (1) the trial court lacked jurisdiction to disconnect because the notice and hearing requirements of section 7—3—2 were not met; (2) the court lacked jurisdiction to disconnect because the original petition did not contain the signatures of a majority of the owners of the land described in the petition, as required by section 7—3—1; (3) the court's finding that disconnection would not unreasonably disrupt the growth prospects and plan and zoning ordinances of the Village was against the manifest weight of the evidence; and, (4) the court's finding that disconnection would not unduly harm the Village through loss of tax revenue in the future was

against the manifest weight of the evidence.

The Village was a newly organized village incorporated on February 24, 1981. The Illinois National Bank & Trust Company of Rockford (petitioner), as trustee, filed the instant petition to disconnect on February 19, 1982, within one year of the Village's incorporation, as required by section 7—3—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—1). A hearing on the petition was set for March 12, 1982, and notice of the hearing was published on February 27, 1982. However, the notice failed to describe the property proposed to be disconnected, and failed to indicate that the municipality and any owners or residents of the territory to be disconnected or the municipality shall have an opportunity to be heard, as required by sections 7—3—2(2) and 7—3—2(4) of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, pars. 7—3—2(2), (4)).

On March 12, 1982, the Village was ordered to respond to the petition, and the response, filed March 19, 1982, admitted in relevant part that the petition was filed within one year of the Village's organization.

The cause was subsequently continued on numerous occasions until November 18, 1982, pursuant to section 7—3—3 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—3). On that date petitioner moved to amend its petition to correct the legal description of the property in the petition. Petitioner's counsel explained at the hearing that it discovered that the legal description of Tract I included property to the north which was not owned by petitioner. The court granted the motion, which was not objected to by the Village, and the petition was subsequently amended to exclude the encroached-upon property.

At the November 18 hearing the parties also filed a written stipulation which stated, in relevant part, that petitioner is the owner of the real property sought to be disconnected, that there are no electors residing on the property in question, and that the petition was properly filed within one year of the Village's organization. Subsequently, the Village's attorney stated that he was not admitting that the notice requirements of section 7—3—2 had been complied with, noting that they were not alleged in the petition and he had not yet seen the published notice. The deficiencies in the original notice were then discovered by the court and petitioner stated that the notice was prepared by it at the court's direction. The Village expressed its willingness to waive notice as to itself; however, the court ordered that it be republished and the hearing reset on the belief that the notice requirements may be jurisdictional. The hearing was set for December 9, 1982, and

the notice was republished on November 26, 1982, in proper form. The Village stipulated to service of the notice upon it.

On November 30, 1982, the Village filed a motion to dismiss the petition on the jurisdictional grounds raised in this appeal, which motion was argued on December 1, 1982. At the hearing on the motion, the Village requested leave to withdraw its previous waiver of notice, stating that the jurisdictional requirements of notice cannot be waived. The motion to dismiss was denied and the cause was continued for a hearing on the merits on December 9, 1982. Just prior to the December 9 hearing, the Village moved to amend its response to the petition to deny that the petition was properly filed within one year of the Village's incorporation, and to strike that portion of the stipulation stating that the petition was properly filed within the one-year limitation period. The motion was granted.

At the hearing on the merits of the petition to disconnect, it was established that the territory sought to be disconnected contains 523 acres which represents approximately 10% of the 5,234 acres contained within the Village. This 523-acre parcel is comprised of two tracts of land. Tract I contains 350 acres of land presently zoned for planned community development under a special use permit. Under the permit, 73.3 acres of this tract is approved for commercial use, 50.8 acres for industrial use, and 227 acres for residential use. However, if by November 1984 the owner of the property, Alden Orput, has not undertaken development pursuant to the special use permit, it will terminate and the zoning will revert back to agricultural use. As of the date of the hearing, on December 9, 1982, no construction had yet been commenced on the property, and there were no plans for its development. Additionally, various other conditions of the special use permit, which are not relevant here, had not been met.

Tract II, which is just east of Tract I, contains 173 acres zoned agricultural, and is owned by Brian Hutchins. This tract is designated under the Winnebago County Year 2000 Plan as low and medium density housing. However, at the time of the hearing, no one was residing on any of the property in Tracts I or II.

It was also established at the hearing that disconnection of these tracts would result in a loss of $6,300 from the township road and bridge sharing fund. Receipts from this fund in 1982-83 fiscal year totaled approximately $63,500. However, disconnection would also result in the loss of a road annexed to the property and thus would presumably save the Village these maintenance costs. No property tax had ever been levied upon the subject property.

The Village first contends that the trial court was deprived of

jurisdiction to grant the disconnection petition because proper notice was not published within the time prescribed in section 7—3—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—2), and because the original petition was not signed by a majority of the owners of the land described therein, as required by section 7—3—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—1).

Section 7—3—2 of the Illinois Municipal Code states, in relevant part:

"Sec. 7—3—2. Upon the filing of the petition as provided in Section 7—3—1, the court shall set the same for public hearing *which date of public hearing shall be within 30 days of the date of the filing of the petition. The court shall give at least 10 days notice of such hearing by publishing notice* *** not less than 10 days prior to the date set for the public hearing. The notice (1) shall refer to the petition filed with the court, (2) *shall describe the territory proposed to be disconnected,* (3) shall indicate the prayer of the petition and the date, time and place at which the public hearing will be held and (4) *shall further indicate that the municipality and any persons residing in or owning property in the territory involved or in the municipality from which such territory is sought to be disconnected shall have an opportunity to be heard on the prayer of the petition.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—2.)

It is undisputed that the original notice, published February 27, 1982, was defective under section 7—3—2 for failing to describe the territory in question and for failing to indicate that the Village and residents of the Village had an opportunity to be heard on the disconnection petition. (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—2.) It is also undisputed that these defects were removed in the republication of notice on November 26, 1982, which republication was 13 days prior to the actual hearing date on December 9, 1982. However, the Village argues that the time limitations contained in the above statute are jurisdictional. Thus, it argues that although the hearing was "set" within 30 days of the filing of the original petition, the defects in the notice deprived the court of jurisdiction to proceed, and made it impossible to have proper notice 10 days in advance of the original date set for public hearing, as purportedly required by the statute. Petitioner maintains, on the other hand, that the Village expressly waived any right it had to object to the defective notice, and that in any event the time limitations in the statute are not jurisdictional.

With respect to petitioner's waiver argument, we note that al-

though the Village initially expressed a willingness to proceed with the hearing despite the defects in notice, this position was later reversed when the Village requested leave to withdraw its previous waiver and moved to dismiss the petition on the grounds here urged. The motion to dismiss was denied on the merits; thus, it cannot be said that the Village waived its objections on this basis.

On the merits, we first emphasize that there is no issue as to whether proper notice to the Village's residents prior to the hearing on the disconnection petition is mandatory. The residents here were in fact given advance notice. (*Cf. People ex rel. Hopf v. Village of Bensenville* (1971), 132 Ill. App. 2d 907, 909, 272 N.E.2d 50; *In re Annexation to the Village of South Barrington* (1972), 7 Ill. App. 3d 958, 960-61, 289 N.E.2d 1.) Rather, the inquiry here is only whether the proper notice is required to be given within 20 days of the filing of the disconnection petition.

Save for the powers enuring to a "home rule" municipality, municipalities are creatures of the legislature and are subject to the legislative will. (*People v. Village of North Barrington* (1968), 94 Ill. App. 2d 265, 268, 237 N.E.2d 350.) Thus, it is the legislature which is granted the power of prescribing the conditions relative to the alteration of municipalities—whether through annexation, disconnection or incorporation. (*La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 218, 225 N.E.2d 33.) The only duty of the courts is to construe the statutes in a reasonable and sensible manner. 81 Ill. App. 2d 209, 218, 225 N.E.2d 33.

The purpose of the disconnection statute is to grant relief to taxpayers in the disconnected area and to permit property not being used for municipal purposes to avoid the burdens of municipal taxation and regulations. (*In re Disconnection from the City of Palos Heights* (1961), 30 Ill. App. 2d 336, 341, 174 N.E.2d 574.) Thus, the courts have liberally construed disconnection statutes in favor of disconnection, whether it is by operation of law (*In re Roberts Park Fire Protection District* (1975), 61 Ill. 2d 429, 337 N.E.2d 8), or is initiated by a petition setting forth the requisite facts to support disconnection (*Sun Electric Corp. v. Village of Prairie Grove* (1978), 59 Ill. App. 3d 608, 612, 375 N.E.2d 984; *In re Disconnection from the City of Palos Heights* (1961), 30 Ill. App. 2d 336, 342, 174 N.E.2d 574; see also *In re Disconnection from the Sanitary District of Rockford* (1982), 111 Ill. App. 3d 339, 347, 443 N.E.2d 1079). However, in all cases construing a statute, it is the legislative intent which governs, and once ascertained must be given effect. *Griffin v. City of North Chicago* (1983), 112 Ill. App. 3d 901, 907, 445 N.E.2d 827; *Balmes v. Hiab-*

*Foco, A.B.* (1982), 105 Ill. App. 3d 572, 574, 434 N.E.2d 482.

A mandatory provision in a statute is one which renders the proceeding to which the provision relates void and illegal if the provision is omitted or disregarded. When a statute prescribes performance of an act by a public official or a public body, the question whether it is mandatory or directory depends upon its purpose. (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332.) If the provision merely directs the conduct for guidance of officials or specifies time for performance of an official duty, it is directory, absent negative language denying performance after the specified time. (71 Ill. 2d 13, 21, 373 N.E.2d 1332; see also *Walker v. Cronin* (1982), 107 Ill. App. 3d 1053, 1059, 438 N.E.2d 582.) If the conduct is prescribed in order to safeguard someone's rights, which may be injuriously affected by failure to act within the specified time, the provision is mandatory. *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332.

In *In re Annexation to the City of Darien* (1973), 16 Ill. App. 3d 140, 145, 304 N.E.2d 769, this court applied the foregoing principles to a statute which prescribed the time within which a court must order an annexation hearing to be held upon a petition, and found the provision to be directory only. (See Ill. Rev. Stat. 1971, ch. 24, par. 7—1—2.) It was concluded that because there was no declaration in the statute that conformity to the time limitation was essential to the validity of the proceedings, the trial court's failure in that case to enter an order fixing a hearing date within the prescribed time was not fatal to the proceedings which followed. Accord, *Winfield Fire Protection District v. City of Wheaton* (1975), 29 Ill. App. 3d 630, 634, 332 N.E.2d 43.

■ Pursuant to these authorities, we believe that the time limitations in section 7—3—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—2) are directory only and that the failure of the court to publish proper notice within the time prescribed does not affect the validity of the proceedings. (*Winfield Fire Protection District v. City of Wheaton* (1975), 29 Ill. App. 3d 630, 634, 332 N.E.2d 43; *In re Annexation to the City of Darien* (1973), 16 Ill. App. 3d 140, 145, 304 N.E.2d 769.) The provision in question contains no language denying performance after a specified time, and the Village has not indicated how a failure to act within the time limitation would injuriously affect anyone's rights. It is also evident that the intent of section 7—3—2 was to afford the residents of the municipality the opportunity to be heard on the petition, and it is undisputed that such an opportunity was afforded here. We therefore find that the defects in the original notice which resulted in a failure to strictly comply with

the time limitations set forth in section 7—3—2 did not deprive the trial court of jurisdiction. Ill. Rev. Stat. 1981, ch. 24, par. 7—3—2.

■■ Relying upon *People ex rel. Hoyne v. Stumpf* (1916), 275 Ill. 81, 113 N.E. 994, and *Soldier Creek Drainage & Sanitary District v. Illinois Central R.R. Co.* (1926), 323 Ill. 350, 154 N.E. 153, the Village next contends that there was no jurisdiction because the original petition was not signed by a majority of the owners of the land described in the petition, as required by section 7—3—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—1). The Village's argument is premised upon the fact that the original petition mistakenly included certain land which was not owned by petitioner, and whose owner never signed the petition. Thus, the Village reasons, the petition was signed by only one of two landowners and this does not constitute the required "majority." (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—1.) The Village further argues that the attorney for petitioner had no power to amend the petition without the signature of the bank. Petitioner contends that the Village's failure to object to the amendment at trial, and its stipulation that the petition was properly filed within one year now waives the issue for review. Petitioner further contends that amendment was proper under section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—616), to correct a technical defect in the pleadings.

With respect to petitioner's waiver argument, we note that upon the Village's motion, the word "properly" was stricken from the stipulation. Thus, it was only stipulated that the petition was "filed," but not that it was filed "properly." Further, although the Village did not object to the amendment at trial, there is support for the proposition that the signature requirement is jurisdictional in nature and, thus, cannot be waived. (See *People ex rel. Hoyne v. Stumpf* (1916), 275 Ill. 81, 84, 113 N.E. 994; *People ex rel. Lange v. Old Portage Park District* (1934), 356 Ill. 340, 345, 190.N.E. 664, holding that a similar requirement in the Park District Code (Smith's Stat. 1933, ch. 105, par. 256 *et seq.*) was jurisdictional even though it contained no words to the effect that a defect in this requirement shall be fatal to the cause.) We, therefore, consider the argument despite the Village's failure to raise it at trial. *People ex rel. Eminger v. Sangamon & Drummer Drainage District* (1912), 253 Ill. 332, 337, 97 N.E. 667.

In *People ex rel. Hoyne v. Stumpf* (1916), 275 Ill. 81, 113 N.E. 994, the court reviewed a petition to organize a park district under Hurd's Stat. 1916, at 1880, codified today at Ill. Rev. Stat. 1981, ch. 105, par. 2—2. The original petition was alleged to have contained the signatures of more than 100 legal voters residing in the territory

sought to be organized, as required under the statute. However, subsequent to the filing of the petition it was discovered that a portion of the territory described therein had been organized into another park district. The petition was thereafter amended to exclude this territory, and the remaining property was subsequently organized into a park district. The amended petition was signed only by the attorney for petitioners. The reviewing court found that the filing of a petition signed by the required number of legal voters was jurisdictional, and that the "county judge is not empowered to act and to call an election [for organization] in the absence of such a petition." (275 Ill. 81, 84, 113 N.E. 994.) The court further noted that the proceeding was purely statutory and that the act nowhere provided for an amendment of the petition. The court finally concluded that while the original petition clearly defined the territory intended to be embraced within the district, it included within that territory lands which could not be legally included within such district. Under these circumstances, the court held that petitioners "had no recourse except to withdraw the petition and present another which complied with the requirements of the statute and correctly defined the territory which it was intended to organize into a park district." (275 Ill. 81, 85, 113 N.E. 994.) The court also held that an amended petition which corrected the defect and was signed by the attorney alone could not vest the court with jurisdiction to act.

In *Soldier Creek Drainage & Sanitary District v. Illinois Central R.R. Co.* (1926), 323 Ill. 350, 154 N.E. 153, it was determined that the original petition, when filed, did not contain the signatures of a majority of the owners of the land described in the petition. The petition was further defective in that it contained land included within another park district and which could not legally be included in the petition. The amendment of the petition was sought for the sole purpose of reducing the acreage of the property so that the signature requirement would be met. Under these circumstances the court found that the original petition was fatally defective for failing to contain the required number of signatures, and that this defect was not curable by amendment because the county court never acquired jurisdiction of the subject matter.

While these cases seemingly support a reversal of the amendment allowed in this case, they are distinguishable from the facts of this case in several respects. First, there is no indication in the record here that the land originally included in the petition could not legally be disconnected from the Village, a fact which existed in both the *Stumpf* and *Soldier Creek* cases. The defect in the instant case was

an error of fact rather than one of law. Second, in the present case it can readily be determined that the required number of signatures existed for the disconnection petition after the property description was amended. In fact, the parties stipulated that petitioner was the owner of the property sought to be disconnected and that there were no electors residing on the real property in question. However, in both *Stumpf* and *Soldier Creek*, it was impossible to determine after the amendment that the petition contained the required number of signatures.

We conclude after reviewing this record that the issue here is really whether the legal description of the property could be amended to correct an inadvertent error, and not whether the original petition contained sufficient signatures to vest the trial court with jurisdiction to rule on the petition. It was never disputed that the property sought to be disconnected here had but one owner, and that that owner in fact signed the petition.

■■ By way of analogy, courts in annexation proceedings have held that certain defects in the legal description of property may be amended prior to the hearing on the validity of the petition. In *In re Annexation in the County of Kankakee* (1961), 30 Ill. App. 2d 391, 174 N.E.2d 710, the court affirmed the trial court's allowance of an amendment to eliminate lands in the petition which could not legally be included in the petition. While finding that section 7—4 of the Revised Cities and Villages Act allowed such amendments (Ill. Rev. Stat. 1957, ch. 24, par. 7—4), the court further stated that the Civil Practice Act would permit such an amendment and would control in all matters of procedure wherein the special statute is silent. (*In re Annexation in the County of Kankakee* (1961), 30 Ill. App. 2d 391, 396, 174 N.E.2d 710; see Ill. Rev. Stat. 1981, ch. 110, par. 2—616.) This principle was also applied in a disconnection case dealing with the question whether intervention by other property owners was properly allowed under the statute. (*First National Bank v. Village of South Pekin* (1940), 303 Ill. App. 269, 25 N.E.2d 87.) We agree that the Civil Practice Act, now the Code of Civil Procedure, controls those matters of procedure on which the disconnection statute is silent. Further, we find no abuse of discretion in the trial court's allowance of an amendment where the defect in the property description was inadvertent, where there is only one owner of the property in question and that owner in fact signed the original petition, where the amendment to the petition was made before the hearing on the validity of the petition itself (see *In re Annexation to the Village of Plainfield* (1975), 25 Ill. App. 3d 1026, 1033, 323 N.E.2d 841), where the Village did not object to the defect now al-

leged on appeal but to the contrary expressed a desire to proceed with the hearing, where the amendment was not sought to reduce the petitioner's burden of producing the required number of signatures but was sought for the sole purpose of correcting a technical defect in its pleadings (*cf. Soldier Creek*), where recirculation of an amended petition would therefore add nothing to the clarity of the pleadings (see *In re Annexation in the County of Kankakee*), and where the amendment was used for the proper purpose of avoiding the bar of the statute of limitations (see *In re Annexation to Oregon Park District* (1978), 67 Ill. App. 3d 61, 65, 385 N.E.2d 67).

■ Next, the Village argues that the trial court's finding that disconnection would not unreasonably disrupt its growth prospects and plan and zoning ordinances was against the manifest weight of the evidence because all the testimony presented was that of Village officers who each concluded that the prospects and ordinances would be unreasonably disrupted. (See *Sun Electric Corp. v. Village of Prairie Grove* (1978), 59 Ill. App. 3d 608, 375 N.E.2d 984; Ill. Rev. Stat. 1981, ch. 24, par. 7—3—1(5).) We disagree. Although all the witnesses, except for Mr. Orput, the owner of the subject property, were Village officers, we find that their testimony contained sufficient facts to support the trial court's conclusion. *Cf. Sun Electric Corp. v. Village of Prairie Grove* (1978), 59 Ill. App. 3d 608, 375 N.E.2d 984.

It was demonstrated that although a portion of the land was currently zoned for planned community development under a special use permit, the permit would expire by its own terms in November 1984 if construction is not commenced by that time. Development of the land is apparently discretionary with the owner who, at the time of the hearing, had met none of the conditions of the permit, had not begun any construction on the property, and had no plans for its development. Upon termination of the special use permit the zoning would revert back to agricultural. Under these circumstances, we cannot conclude that the zoning ordinances would be unreasonably disrupted by disconnection.

With respect to the future growth of the Village, the Village president, Charles Beutell, testified that the property along Route 173, which borders the subject property to the south, is the property into which the Village wishes to expand. However, Beutell testified that if the subject property were disconnected there would still be a strip of land about 1,500 to 1,800 feet wide that would allow the Village to expand to the east to annex the desirable property along Route 173. David Sliktas, the planner for the Village, also testified that annexation of the land east of the Village along the highway would be possi-

ble even if the subject property were disconnected.

In *La Salle National Bank v. Village of Willowbrook* (1963), 40 Ill. App. 2d 359, 362, 189 N.E.2d 690, this court stated that it is the state of events that exist at the time of the hearing which controls the validity of the petition, and not the state of events that a litigant might desire. The court further stated that the Village, which was appealing from the disconnection order, could not defeat the order on the theory that it frustrates its future designs. (40 Ill. App. 2d 359, 362, 189 N.E.2d 690.) While in the present case certain utilities were available on the property at the time of the hearing, these were not located underground, as required by the special use permit. Neither had permission for a change in access to certain roads been obtained from the Federal Government, as required by the special use permit. Given the state of events that existed at the time of the hearing, we find adequate support in the record for the trial court's finding that the growth prospects of the Village would not be unreasonably disrupted by disconnection.

■■ Finally, the Village challenges the court's finding that disconnection would not unduly harm the Village through loss of tax revenue in the future. (Ill. Rev. Stat. 1981, ch. 24, par. 7—3—1(7).) In reaching this conclusion, the trial court noted that the only evidence before it at the time of the disconnection hearing was the loss of $6,300 from the road fund. In 1981-82 the fiscal year budget of the Village was $845,000. In 1983 the fiscal year appropriation of the Village was $1,245,000. Thus, the $6,300 loss in tax revenue represents an insignificant portion of the total budget of the Village. In addition, the Village treasurer testified that if the subject property were disconnected the Village would no longer have to pay for the maintenance of Burden Road, which travels between Tract I and Tract II, and would therefore be saved that expense. Further, at the time of the hearing, no property tax had ever been levied upon the subject property.

The Village's argument that future tax revenue will be lost is based upon its anticipation of the future development of the subject property. However, the record here does not support a finding that any development of the property is imminent, or even remotely planned at the present time. Thus, any finding of a loss of tax revenue which might be gained through development of the property in the distant future would be purely speculative. Accordingly, we conclude that the court's finding that the Village would not be unduly harmed through loss of tax revenue in the future is not against the manifest weight of the evidence.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.